ERR JOHNSON, Respondent, v. AMBURSEN
  HYDRAULIC CONSTRUCTION COMPANY,
  Appellant.

Springfield Court of Appeals, January 30, 1915.

1. **MASTER AND SERVANT: Relationship: Establishment of: Evidence.** In an action for injuries to servant because of alleged negligence of master a contention on the part of the master that the relationship of master and servant was not shown to exist considered disproven by plaintiff's evidence.

2. **———: ———: ———: Payment by Check.** Where plaintiff was paid by checks signed by an agent of defendant, this is evidence that plaintiff was in the employ of defendant, was acting within the scope of his employment, and that the party issuing the checks had authority to do so.

3. **EVIDENCE: Admissions: Inference.** Where plaintiff filed an application before trial asking that a certain contract which he alleged defendant had entered into, be produced, and defendant, not denying the making of the contract, stated that it had diligently searched for same but could not find it, this was sufficient to admit that such contract was in existence, or had been.

4. **NEGLIGENCE: Injuries: Proximate.** The primary cause is the proximate cause of an injury, where it is so connected with the succeeding events that all create or become a continuous whole, the one operating on the others so as to make the injury the result of the primary cause.

5. **NEGLIGENCE: Injuries: Unguarded Machinery: Reasonable Result.** Action for damages for personal injuries received from coming in contact with unguarded revolving cogwheels which plaintiff was compelled to lean over to oil machinery. The negligence alleged was failure to provide a covering for a pit on which covering plaintiff could have stood and oiled the machinery. Evidence considered sufficient to show that defendant might have foreseen plaintiff's injuries as a result of such failure.

6. **NEGLIGENCE: Consequential Damages: Plaintiff Must Establish What.** In an action for consequential damages resulting from defendant's negligence, plaintiff must show a causal connection between the negligent act and the injury as to bring it within the reasonable contemplation of defendant that such injury would naturally and probably result from such act.

7. **JURY: Questions for: Proximate Cause: Consequential Injuries.** It is ordinarily a question for the jury as to what constitutes the proximate cause of an injury. Also the jury is ordinarily to determine whether or not the injurious consequences that resulted from defendant's negligence are such as a reasonably prudent man ought to have foreseen.

8. **NEGLIGENCE: When Assumption of Risk Eliminated.** Where evidence establishes defendant's negligence, the question of assumption of the risk on the part of the plaintiff is eliminated from the case.

9. **MASTER AND SERVANT: Personal Injuries: Oiling Machinery: Contributory Negligence.** Action for injuries received while oiling an unguarded sprocket wheel. The method used by plaintiff was the only one provided by defendant. Although plaintiff knew of the environments and conditions he is not barred from recovery on account of contributory negligence unless the danger was so glaring that an ordinarily prudent man would not have attempted the task. Facts in the case considered and such holding considered not warranted.

10. **EVIDENCE: Secondary Evidence: Proof of Contents of Check: When Permissible.** Where the court ordered defendant to produce certain checks and defendant replied that they were beyond the jurisdiction of the court if in existence, it was not error to permit the introduction of secondary evidence as to their contents.

11. ———: **Opinion Evidence: When Admitted.** That a certain person was defendant's superintendent is not to be excluded as opinion evidence.

12. **APPELLATE PRACTICE: Evidence: Harmless Admissions.** Where one count of a petition was dismissed by plaintiff after the admission of evidence applicable only to that count and no element of liability on such count was submitted to the jury, no reversible error was committed by such admission.

13. **PLEADINGS: Amendments: Departure: Waiver.** Where defendants answered to a certain count in an amended petition and proceeded to trial, it matters not whether there was a departure from the original cause of action. The defendant by answering and proceeding to trial waived the right of objection.

14. **INSTRUCTIONS: Assumption of Risk: When Instruction Properly Refused.** Instructions were properly refused where they made plaintiff's knowledge of defendant's negligence a risk that plaintiff assumed.

15. ———: **Duplicate Charges: Properly Refusing Additional Charges.** It is proper to refuse to instruct further on a point in a case which has already been correctly and sufficiently covered by another instruction.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Lyon & Swarts, Dwight D. Currie* and *Mann, Todd & Mann* for appellants.

· The court erred in refusing to give instructions in the nature of demurrers to the evidence offered at the close of the plaintiff's case and at the close of the whole case because: (a) There was no evidence to show that the defendant was in charge of the work in which plaintiff was engaged or was the master of the plaintiff. Rubber Co. v. Reinhardt, 88 Ill. App. 195; Miles v. Packers Assn., 41 Ore. 617, 69 Pac. 827. (b) The proximate cause of the injury to the plaintiff was not the failure to cover the scuttle or pit but was his negligence in going near the cogwheels while wearing a loose slicker coat when the wind was blowing a gale, and was not due to any neglect of duty upon the part of the appellant. The risk of injury by reason of the unguarded condition of cogwheels was a danger incident to the plaintiff's employment and he assumed such risk. Espenlaub v. Ellis, 72 N. E. 527, 34 Ind. App. 163; Jones v. Tobacco Co., 53 S. E. 848, 141 N. C. 202; O'Connor v. Whittall, 48 N. E. 844, 169 Mass. 563; Mathias v. K. C. Stockyards, 185 Mo. 434; Bradley v. Railroad, 138 Mo. 293; Heibel v. Bair, 103 Mo. App. 632; Jackson v. Railroad, 104 Mo. 448; · McIntosh v. Railroad, 58 Mo. App. 285; Letanovsky v. Shoe Co., 157 Mo. App. 120; Musick v. Packing Co., 58 Mo. App. 322; Schroeder v. Car Co., 56 Mich. 132 (cited and approved in Bair v. Heibel, supra); Townsend v. Langlese, 41 Fed. 919 (cited and approved in Bair v. Heibel, supra); Russell v. Riverside Worsted Mills, 54 Atl. 375, 24 R. I. 591; Sullivan v. India Mfg. Co., 113 Mass. 396 (cited and approved in Bair v. Heibel, supra, also in Bradley v. Railroad,

supra); Clarke v. Barnes, 37 Hun, 389 (cited and approved in Bair v. Heibel, supra); Stephenson v. Duncan, 73 Wis. 404 (cited and approved in Bair v. Heibel, supra); Sanborn v. Railroad, 35 Kan. 292, 10 Pac. 860, 861-2-3 (cited and approved in Bair v. Heibel, supra); Lore v. Mfg. Co., 160 Mo. 608; Lemoine v. Aldrich, 177 Mass. 89, 58 N. E. 178; Glavin v. Railroad, 213 Mass. 435, 100 N. E. 614; Demers v. Marshall, 178 Mass. 9, 59 N. E. 454; Wilson v. Mass. Cotton Mills, 169 Mass. 67, 47 N. E. 506; McIntire v. White et al., 171 Mass. 170, 50 N. E. 524; Goulding v. Eastern Bridge & Structural Co., 210 Mass. 52, 96 N. E. 71; O'Malley v. Gas Light Co., 158 Mass. 135, 32 N. E. 1119; Lumber & Timber Co. v. Mooney, 42 Pac. 952; Rock v. Indian Orchard Mills, 142 Mass. 552, 8 N. E 401; Foley v. Pettee Machine Works, 149 Mass. 294, 21 N. E. 304; Tinkham v. Sawyer, 153 Mass. 485, 27 N. E. 6; Van Horn v. Railroad, 4 N. Y. St. 782; Wilson v. Cotton Co., 169 Mass. 67, 47 N. E. 506; Cunningham v. Iron Works, 92 Me. 501, 43 Atl. 106; Brown v. Mill Co., 22 Wash. 317, 60 Pac. 1126; Lumber Co. v. Bethea, 57 Ark. 76, 20 S. W. 808. (c) A servant cannot recover for an injury sustained merely on the ground that there was a safer way of conducting the business, the adoption of which would have prevented the injury. Stafford v. Railroad, 2 N. E. 185; Naylor v. Railroad, 11 N. Y. 24; Sanborn v. Railroad, 35 Kan. 292, 10 Pac. 860, 861, 862, 863 (cited and approved in Bair v. Heibel, supra); O'Connor v. Whittall, 48 N. E. 844, 169 Mass. 563; Bradley v. Railroad, 138 Mo. 293. (2) The court erred in permitting the witnesses to testify, over appellant's objection, as to who appeared to be in charge of the work of constructing the dam; such testimony was incompetent because it called for an opinion and conclusion of the witnesses, and the witnesses were not shown to have any knowledge of the subject. McCormack v. Herboth, 115 Mo. App. 193, 202; Rumsey v. Railroad, 154 Mo. 215, 250;

Kendall Boot & Shoe Company v. Bain et al., 46 Mo.
App. 581, 588; Krueger v. Railroad, 84 Mo. App. 358,
366; Dooner v. Canal Co., 164 Pa. St. 117, 30 Atl. 269;
17 Cyc. 219-222; Brady v. Rogan, 2 Willson Civ. Cas.
Ct. App. Sec. 264 (Tex.); Gore v. Canada Life Assur-
ance Co., 77 N. W. 650, 119 Mich. 136; Arndt v. Boyd,
48 S. W. 771; Building & Loan Assn. v. Winares, 60
S. W. 854, 24 Tex. Civ. App. 544; McCormick v. Mining
& Milling Co., 63 Pac. 820, 23 Utah, 71.   (3)   The ap-
pellant's motion to strike out the second count of the
third amended petition should have been sustained.
31 Cyc. 433-34; Jones v. Whitney, 136 Mo. App. 683,
688; Ross v. Cleveland & Aurora Mineral Land Co.,
162 Mo. 317; Riley v. Railroad, 124 Mo. App. 278;
Sims v. Field, 24 Mo. App. 557; Heman v. Glann, 129
Mo. 325; Leise v. Meyer, 143 Mo. 547; Purdy v. Pfaff,
104 Mo. App. 331; Holliday v. Jackson, 21 Mo. App.
660, 664; Sears v. Loan Co., 56 Mo. App. 122; Railroad
v. Wyler, 158 U. S. 285; Parmalee v. Railroad, 78 Ga.
441, 10 S. E. 113; Bolton v. Railroad, 83 Ga. 659,
10 S. E. 352; Railroad v. Campbell, 49 N. E. 314,
170 Ill. 163; Moniot v. Jackson, 81 N. Y. S. 688.

*Watson & Page* and *Moore & Aubrey* for respond-
ent.

(1)   The peremptory instruction requested by
defendant was properly refused:   (a) Because there
was ample evidence that defendant was in charge of
the boat, and that plaintiff was the servant of the
defendant.   Fleishman v. Ice and Fuel Co.; 148 Mo.
App. 117, and cases there cited; Carp v. Insurance
Co., 203 Mo. 339; Stubbs v. Mulholland, 168 Mo. 80.
(b)   The open scuttle was the proximate cause of the
injury to plaintiff.   Holman v. Iron Co., 152 Mo. App.
672; Meade v. Railroad, 68 Mo. App. 92; Bassett v.
St. Joseph, 53 Mo. 290; Brueggeman v. Fuel Co., 171
Mo. App. 59.   (c)   The plaintiff did not assume the

risk, the danger being caused by the negligence of the master. Strother v. Milling Co., 169 S. W. 43; Crader v. Railroad, 164 S. W. 678; Gambino v. Coal and Coke Co., 164 S. W. 264; Obermeyer v. Chair Co., 229 Mo. 97; Strickland v. Woolworth, 143 Mo. App. 528; Jarrell v. Coal Co., 154 Mo. App. 552. (d)  Nor will knowledge of the danger preclude a recovery, if caused by the master's negligence, unless the danger is so threatening that a person of ordinary prudence would refuse to longer remain in the master's service. Robbins v. Mining Co., 105 Mo. App. 78; Huhn v. Railroad, 92 Mo. 440; Pauck v. Provision Co., 159 Mo. 467; Corby v. Mo. & Kan. Tel. Co., 231 Mo. 417; Rogers v. Tegarden, 170 S. W. 675.  (2)  There was no error in permitting witnesses to testify as to who had charge of the work, such testimony not being conclusions, nor opinions, but facts.  Fulton v. Railroad, 125 Mo. App. 239; McGinnis v. Printing Co., 122 Mo. App. 236; Partello v. Railroad, 217 Mo. 645; Kirchoff v. United Railways, 155 Mo. App. 70; Standley v. Railroad, 121 Mo. App. 544; Eyerman v. Shehan, 52 Mo. 221; Haymaker v. Adams & Son, 61 Mo. App. 581; Walker v. Davis, 83 Mo. App. 374; Madden v. Railroad, 50 Mo. App. 666; Construction Co. v. O'Brien, 81 Mo. App. 641; Taylor v. Jackson, 83 Mo. App. 649; Greenwell v. Crow, 73 Mo. 639.

(3)  Appellant cannot complain of the action of the court in overruling its motion to strike out the second count of plaintiff's petition: (a)  Because the amendment was not a departure, and was properly allowed under the rules of pleading.  Lane v. Dowd, 172 Mo. 167; Lottman v. Barnett, 62 Mo. 170; Clothing Co. v. Railroad, 71 Mo. App. 241; Stewart v. Van Horn, 91 Mo. App. 655; Walker v. Railroad, 193 Mo. 477; Finer v. Nichols, 158 Mo. App. 539; Ingwerson v. Railroad, 150 Mo. App. 374; State ex rel. v. Bourne, 151 Mo. App. 104; Coleman v. Lumber Co., 105 Mo. App. 254; Knight v. Railroad, 120 Mo. App. 311.  (b)  But

whether the amendment was properly allowed or not, the rights of defendant were waived by its answering and going to trial. Fuggle v. Hobbs, 42 Mo. 537; McAdow v. Railroad, 164 S. W. 188; Berkowski v. Janicke, 157 S. W. 125; Scovill v. Glasner, 79 Mo. 449; Grymes v. Lumber Co., 111 Mo. App. 361-2.

FARRINGTON, J.—The plaintiff recovered a judgment against defendant for $7500 on account of personal injuries alleged to have been sustained by him while in the employ of the defendant.

Plaintiff in the original petition sought to recover damages on the charge that defendant negligently and carelessly failed to cover certain machinery consisting of cogwheels and shafts on a boat used on White river in the construction of a dam several miles up the river from Forsyth in Taney county, Missouri. The suit was brought against several defendants. A first amended petition was filed against three defendants, not necessary to be discussed. A second amended petition was filed consisting of two counts, one of the defendants named in the original petition and in the first amended petition being dropped. The first count charged negligence in failing to securely guard certain machinery. The second count sought recovery on the common-law liability of defendants in failing to furnish plaintiff a reasonably safe place in which to work, requiring him to perform duties at a place near the cogwheels where a hole in the floor of the boat, called a scuttle hole, was left open with no covering, alleging that owing to the position the plaintiff was required to assume in performing his duties by reason of the scuttle hole being left open he was subjected to unnecessary risk and hazard amounting to negligence on the part of his master. The third amended petition was filed against this defendant (appellant) and one other, the first count thereof going to the failure to securely guard the cog-

wheels and the second count proceeding on the common-law liability of the defendant for failure to furnish plaintiff a reasonably safe place in which to do his work.

At the conclusion of the evidence the plaintiff dismissed his suit as to all the defendants except the Ambursen Hydraulic Construction Company, and also dismissed as to the first count of his third amended petition. The judgment, therefore, is based on the second count of the third amended petition wherein the charge of negligence is that defendant negligently and carelessly failed and neglected to provide a covering for the scuttle or pit on the inside of the boat on which covering plaintiff might have stood in safety while engaged in oiling bearings on the shaft; that he was required to stand on the inside of the boat astride the scuttle hole or pit, and by reason of being so compelled to stand astride said scuttle or pit his clothing and a raincoat which he was wearing at the time was caused to come in dangerous nearness to the cogwheels aforesaid and the said coat was by reason of the position in which he was required to stand while so engaged in oiling said shaft bearings caught by the cogwheels aforesaid and the plaintiff was thereby injured.

As to his injuries, the plaintiff alleged and the uncontroverted evidence shows that his left arm was caught between the cogwheels that engaged each other and ground off near where the arm joins the shoulder.

The defendant brings its appeal to this court, charging numerous errors committed by the trial court which will be noticed in the course of the opinion.

The facts are that respondent at the time of his injury was a man about twenty-one years of age and had been working for a number of months in the construction of the White river dam near Forsyth, and that defendant was engaged in building this dam and that in this work several hundred men were employed.

There was used in connection with the work two river boats designated "A" and "B," which were identical in size and construction. These boats were propelled by gasoline engines located near the front end of the boats. The power was transmitted from the engine to the sternwheel of the boat by shafts and cogwheels. In its mechanism there were two cogwheels about two feet in diameter, one located above the other and engaging each other. They were about nine inches from the side of the boat, and a shaft extended from the upper cogwheel through the side wall of the boat, and on the outer end of this shaft was a sprocket wheel over which a chain ran back to the stern of the boat, operating the wheel or sprocket. The side wall of the boat was about three feet high, and outside the wall was a bearing on an axle which required oiling at intervals of every few hours. On the inside of the boat on the floor and about a foot in front of the cogwheels was a hole cut in the false bottom of the boat, called a scuttle. This scuttle was about three feet long and two feet wide, and from the false bottom to the bottom of the boat was about eight inches, and on the day of the accident this space was full of water. Along the side of the scuttle next to the boat wall was a board or timber about two inches in width. A number of photographs were introduced in evidence and are brought here for our examination, two of which we have selected as sufficiently disclosing the situation.

The first picture shows the two cogwheels and right in front of them the scuttle hole. A shaft running through the top cogwheel continues on through the side of the boat to the outside on which there is fastened a small sprocket wheel. This sprocket wheel is shown in the second picture—the smallest wheel there shown, or the one nearest the observer. This sprocket wheel had to be oiled at a place made therefor, by reaching out over the side of the boat and

188MA8

placing the oil can so the oil would go in the oil hole
or oil container.  It was necessary for plaintiff in
performing this task to stand with his left foot on the
false floor of the boat and the other over against the
side of the boat on the two-inch timber, and in this
position to lean forward and out over the edge of the
boat with the oil can.  The evidence shows that a per-
son oiling the sprocket wheel must necessarily hold

Johnson v. Construction Co.

to the upright piece shown in the first picture—the post—with one hand and oil with the other, which would throw his body in a diagonal position with reference to the cogwheels and not in a position squarely facing them.

Other facts will appear in the discussion of the alleged errors.

Appellant insists that the court erred in refusing to give its instruction in the nature of a demurrer to the evidence, first, because there was no evidence to show that defendant was in charge of the work in which he was engaged or that it was the master of the plaintiff. The evidence does show that plaintiff had been working on and about the dam for some eight months; that during that time one W. E. Maxson had general charge of the work, and that plaintiff and other employees were paid their wages every two weeks by checks signed Ambursen Hydraulic Construction Company by W. E. Maxson; that one of the boats had the name of the defendant on it; that the checks were cashed in the usual way; that they were received at the office maintained at the dam and that the same Mr. Maxson had charge of that office; that so far as the payees were concerned, as is shown by this record, they never had any trouble in getting their wages on the checks so signed. It further appears in the record that plaintiff filed an application before the trial in which it was alleged that there was a contract entered into between the defendant herein and some of the other construction companies by which contract the defendant was employed to construct the dam across the river, and that defendant had issued checks to a number of its employees, naming them, and asked that they be produced. The defendant, in reply to the order made by the court on it to produce this contract and these checks, excused its noncompliance with the order, not on the ground that such a contract had never been entered into by it or that it had never issued any such checks, but skilfully attempted to avoid the nonproduction of the same by saying that it had made diligent search for the contract but that it could not find the same in its possession. The statement, as to the contract, that it had searched for it, is sufficient to admit that such a contract was in existence; otherwise, why did defendant go to the trouble

of making a diligent search for it? It would have been much easier and far less evasive to have answered that no such contract ever existed; that fact was in defendant's knowledge. Nor does defendant deny that the checks were issued with its name signed thereon or that it ever paid out any of its funds, but answers that such checks, if they were in existence, had gone into the possession and were under the control of a company in the State of New York. It was easily within the defendant's power to have shown without equivocation that it was not in charge of the work and that Maxson had no authority to sign its name to checks given to men engaged in this work. Besides, the fact that defendant's name did appear on checks which were paid is some evidence that the party issuing them had authority to do so and that they were paid to employees of the payor. Evidence that defendant's name was on the checks which were given and cashed by the men working on the job was competent to show that such checks were given to the defendant's servants and that they were acting in the course of their employment at the time. [Fleishman v. Polar Wave Ice and Fuel Co., 148 Mo. App. 117, 127 S. W. 660.]

Another reason assigned by appellant why the peremptory instruction should have been given against plaintiff is that the failure to cover the scuttle or pit was not the proximate cause of the injury but that it was a risk incident to plaintiff's employment which he assumed. A vast number of authorities are cited by appellant on this point from this and many other States, an analysis of which, however, convinces one that the facts of this case are clearly outside the principle therein declared. The rule is thus declared in 29 Cyc. 491: "The primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, the one so operating on the others as to make the injury the result of the primary cause."

Practically the same definition was aproved by this court in the case of Holman v. Southern Iron Co., 152 Mo. App. 672, 133 S. W. 379. And the principle herein involved on facts somewhat similar with reference to the guarding of an open pit or hole was discussed in Brueggemann v. Ice Co., 171 Mo. App. 59, 153 S. W. 559.

Neither can it be said that such an injury could not have been foreseen or anticipated by the defendant. Here was a workman required to perform a certain task in a certain place. The evidence shows that no other way was possible or had been provided for oiling the sprocket wheel on the outside of the boat except the way in which plaintiff attempted to and did do it. The very physical condition that existed required that he stand in a somewhat strained position with his legs spread apart and necessarily in a position in which he would easily sway back and forth. He had no choice of two ways in which to perform this task. The evidence shows that plaintiff wore an overcoat or slicker, which was procured at the storehouse of the parties constructing the dam, and that it was buttoned up, or fastened all the way down to a point between plaintiff's knees and his ankles. A coat produced at the trial by defendant as that worn by the plaintiff on this occasion (another bit of evidence that defendant must have had something to do with plaintiff when he was hurt) shows that the cogwheels took hold of the coat right at one of the bottom corners in front and gradually worked their way up the coat until they engaged plaintiff's arm. Plaintiff's testimony is that if defendant had provided a platform or covering over the scuttle hole he could have stood in a different position and oiled the sprocket wheel so that he would have been at least three feet from the sprocket wheel, whereas, oiling it as he did, under the conditions existing at the time of his injury, he was required to be not more than two feet from the

cogwheels in a position diagonally opposite them. On examination the picture will disclose that had a covering been placed over this hole for plaintiff to stand on he could have stood with his body facing the side of the boat so that the wind would not have blown the flaps of the coat around and the oiling could have been done at a much safer distance from the cogwheels. It must be remembered that these cogwheels stood nine inches from the side of the boat, a space through which an ordinary man can move. Standing as the plaintiff was required to, with his legs spread apart over this scuttle hole, holding to the post with his right hand, necessarily required him to stand with both his feet nearer the cogwheels in order to oil the sprocket wheel. The physical facts demonstrate as much; and the plaintiff says he was a foot nearer the cogwheels than he would have been required to stand had there been provided a covering for the scuttle hole on which he might stand. The physical reason that he would be required to stand nearer the cogwheels when the scuttle hole is open is an academic reason, to-wit, the hypotenuse of a right-angle triangle is longer than either of the other sides thereof. Standing with his legs apart over this scuttle hole required that he move toward the cogwheels at a certain distance in order that he might reach over diagonally with his left hand. Had he been able to stand on the place where the scuttle hole was he could have set his foot at a point—according to his testimony—something like twelve inches farther from the cog-wheels—and the physical facts show us, at least a considerable distance from the cogwheels—and been able to reach out along the boat and oil the sprocket wheel; a glance at the first picture makes this apparent. With his nearest foot stationed something like twelve inches farther from the cogwheels, and with the side of his body exposed instead of the front thereof, the probability of his being caught would be

far lessened. Of course, he did not slip or fall in
the scuttle hole, which if it had happened, has been sug-
gested would have given him a cause of action against
the defendant. We cannot see why the fact that the
scuttle hole might be a place where one would fall
or slip in and thus impose liability on the master
would be any more reason for so holding the master
than the fact that it required plaintiff to do his work
closer to the cogwheels than he otherwise would, and
required him to assume a position that was more likely
to cause him to be caught by the cogwheels than by
standing sidewise to the cogs, and in standing in a
position which rendered him less steady and less able
to cope with the wind and the control of his slicker
coat while doing his work. It is suggested that the
shoulders can turn without moving the feet, a propo-
sition that is simple and about which there can be no
disagreement; but a glance at the first picture will
also show that one standing facing the cogwheels with
his legs spread apart over the scuttle hole will, when he
does turn his shoulders without moving his feet neces-
sarily throw the left shoulder, the one from which the
side of the coat that was caught hung, nearer the cogs.
It certainly seems to us that the physical facts and the
plaintiff's testimony which is uncontradicted in this
record that he was required to stand closer to the cogs
by reason of the open scuttle hole than he would have
been required to stand had it been covered is some
evidence from which reasonable men might draw the
inference that the open scuttle hole was the cause of
the injury or at least one of the causes contributing
to it in such a way as to preserve the casual connec-
tion between the defendant's negligence and the in-
jury. The wind was blowing and snow was falling
and it was a cold day. It appears from the testimony
of defendant's witnesses that every employee on this
boat who was able to have an outside coat wore one
just like the plaintiff wore. It cannot be said, then,

that defendant could not anticipate that on a cold, windy day, with snow falling, and the boat running, employees on the boat would not have on such a garment as the plaintiff wore.

This court has in the case of Wilt v. Coughlin, 176 Mo. App. l. c. 281, 161 S. W. 888, approved the following rule deduced from the opinion in the case of Christy v. Hughes, 24 Mo. App. 275: "In the action for consequential damages resulting from the *negligence* of the defendant, it devolves on the plaintiff to show that there was such a connection between the negligent act and the injury as to bring it within the reasonable contemplation of the actor that such injury would naturally and probably result from such act, and such as ought to have been foreseen by the defendant as likely to flow from his act."

Besides, the question of the proximate cause of an injury is ordinarily one of fact for the jury as well as whether or not the injurious consequences that resulted are such as ought to have been foreseen by a reasonably prudent man. [Holman v. Souther Iron Co., supra.]

We therefore hold that the question of whether the failure of the defendant to provide a platform or covering over this scuttle hole to be used during the time its employees would be required to oil the sprocket wheel, as well as the question of whether defendant should have foreseen the occurrence by the exercise of ordinary care, are, under the facts of this case, questions for the jury. The jury has resolved such questions in favor of the plaintiff.

This being true, the question of assumption of risk goes out of this case under the recent decisions of the Supreme Court. [Strother v. Kansas City Milling Co., 169 S. W. 43; Patrum v. Railroad, 168 S. W. 622.]

While the plaintiff knew of the existing conditions and the environment at the time he was oiling this

sprocket wheel, still there was but one way that the defendant had provided whereby it could be done. In order that plaintiff be precluded from recovery because of contributory negligence we must hold that the danger was so glaring and perilous and obvious that an ordinarily prudent man would not have attempted the task. [Ganey v. Kansas City, 259 Mo. 654, 168 S. W. 619; Rogers v. Tegarden Packing Co., 185 Mo. App. 99, 170 S. W. 675; Rhea v. Railway Co., 171 Mo. App. 160, 156 S. W. 4.] This we are unwilling to hold under the facts of this case.

The objection to the introduction of testimony with reference to how the pay checks were signed and what was written on them is not well taken. Defendant's reply to the order of court requiring it to produce the contract and checks hereinbefore referred to shows that the checks were beyond the jurisdiction of the court if they were in existence; hence it was not error to admit secondary evidence. [State v. Myer, 259 Mo. 306, 168 S. W. 1. c. 720.]

It is not every conclusion that a witness testifies to that rises to the dignity of an invasion of the province of the jury, and to announce such a doctrine would invade the province of common sense. A witness may properly testify that a conductor was on a street car when she testified that she saw a man dressed in the uniform of a street car conductor exercising the functions on the car usually exercised by street car conductors. To hold that a witness is precluded from giving his conclusion on all matters, as defendant's argument and insistence would lead us to do, would not permit a witness to testify that the color of the boat in question was either black or white, as such answer in the last analysis must necessarily be a conclusion from what the witness has seen. This is all that need be said in answer to appellant's contention that testimony was erroneously admitted to the effect that Maxson was in charge of the work.

It is true there was testimony admitted showing the manner in which the cogwheels could have been guarded, and also testimony that these cogwheels were guarded on the other boat which was exactly like the one on which plaintiff was working when injured. At the time this testimony was introduced plaintiff's first count was still in the case and it charged negligence in failing to properly guard the cogwheels. However, the first count was dismissed by plaintiff at the close of the evidence, and the instructions in nowise placed a liability on the defendant for a failure to guard the cogwheels. The contention that reversible error was committed in this respect is clearly untenable.

Whether the second count, on which the case went to the jury, was a departure from the original cause of action filed by the plaintiff cannot be urged at this time because the defendant waived any such contention by answering to said count and proceeding to trial on the issues made by the pleadings. [Hatcher v. National Annuity Ass'n of Kansas City, 177 Mo. App. 278, 164 S. W. 188; Fuggle v. Hobbs, 42 Mo. 537; Scovill v. Glasner, 79 Mo. 449.]

As to defendant's refused instructions:

Instruction numbered 1, being the peremptory instruction to find for the defendant, was properly overruled and refused for the reasons hereinbefore appearing.

Instructions numbered 2 and 4 were properly refused because they made plaintiff's knowledge of defendant's negligence a risk that he assumed.

There was no error in refusing defendant's instructions numbered 3 and 5 for the reason that the question of contributory negligence was properly submitted in defendant's instruction numbered 12 which was given.

It was not error to refuse defendant's instruction numbered 6 because the identical question embodied

therein is covered by defendant's instruction numbered 14 which was given.

The plaintiff's instruction given by the court correctly submitted the question of negligence on the facts disclosed by the evidence, and was within the allegations of the pleadings on the question of defendant's duty to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, and predicated a recovery on a finding that the failure to cover the pit or scuttle hole was a negligent act from which the injury was caused and one that might reasonably have been anticipated.

In conclusion, we take this opportunity of saying a few words with reference to the manner in which this case is brought before us. There is labeled on the cover of a large volume of printed matter the words "Appellant's Abstract in Lieu of Full Record." On an examination of its contents we have found, instead a *copy* of the full record—evidently prepared by the attorneys having the court stenographer transcribe his notes and then having the printer publish the same and put the cover on. This does not meet the requirements of our rules. We have been insisting no appellants bringing their cases here in accordance with the rule of the court but so far have done nothing other than to call their attention to a failure to do so; as yet, we have not dismissed an appeal or affirmed a judgment for a failure to comply with these requirements because we were apprehensive that attorneys had not familiarized themselves with our rules and our determination that they be enforced in this particular. We again call attention to the fact that our rule as to the abstracting of testimony is one that this court will enforce and that the day of judgment for some litigant whose attorney has been remiss in this duty is not far distant.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur, the latter in a separate opinion.

## SEPARATE CONCURRING OPINION.

STURGIS, J.—It is with much hesitation that I concur in affirming this judgment. I readily agree that no material error was committed in the trial of this case unless the demurrer to the evidence should have been sustained for a failure to show any negligence of the defendant causing, or helping to cause, plaintiff's unfortunate injury. If the failure to properly guard the cogwheels was negligence there would be no question as to defendant's liability, but the plaintiff abandoned that ground of negligence and we must treat the case on the theory that it was perfectly proper to leave the cogwheels open and in such a condition that a workman's clothing was likely to be caught therein by the action of the wind or other cause in case he came too close to the same. This danger was an assumed risk. I grant that it was negligence to leave the scuttle hole in front of the cogwheels uncovered and had plaintiff, in any manner, slipped, or stumbled, or stepped in the scuttle hole and thereby been caught in the gearings this would have made defendant liable. But no such fact is claimed. It is necessary in order to create liability to show that the open scuttle hole was one of the causes of plaintiff's coat being caught in these cogwheels. To my mind, after reading all the evidence and studying the photographs showing the physical facts, there is no such causal connection shown. The jury has found that plaintiff could do this oiling with the scuttle hole uncovered with reasonable safety—that is, without going so near the cogwheels as to be in necessary danger. Otherwise he would be guilty of contributory negligence as he would be also if he went nearer the cogwheels than was necessary in order to do this work, or wore clothing so loose as to have the same effect. As the wind was blowing strongly towards these cog-

wheels which he was facing, a corresponding degree of care was imposed on him.

Plaintiff measured the open part of the scuttle hole and says that it was nineteen inches wide. It seems to me that the only effect of the open scuttle hole was to cause plaintiff to stand astride of it in oiling with his feet that far apart. His right foot and leg were against the side of the boat as he leaned forward and to the right, holding to the upright piece, to reach the place of oiling just outside the side of the boat and on the same shaft as the upper cogwheel. Had the hole been covered he could have stood no different, except to move his left foot nearer the right one, or, perhaps, in front of it, making it nearer the cogwheels. As he did stand the cogswheels were almost directly in front of his right leg, being nine inches 'from the side of the boat. That leg would have been in the same position with the scuttle hole closed. The claim is that with the left leg twelve to fifteen inches nearer the right one, plaintiff could have stood farther from the cogwheels, by which is meant that the bottom of his coat, which the cogs caught and which came below the knee, would have been farther from the cogs. How, or why, this is so is not clear to me. Plaintiff says he does not know in which hand he had the oil can and that he could reach the oiling place equally well with either. This negatives the hypotenuse demonstration and we know the human body is not rigid and the shoulders turn without moving the feet. The fact that plaintiff's right foot rested on a narrow and insecure base makes no difference, as it is not claimed that he slipped in any way. He says he stood two feet from the cogwheels, facing the same, and we know that in leaning forward the bottom of his coat, especially with a strong wind blowing in that direction, would come nearer the cogwheels; but that is true whether the hole at his feet was covered or uncovered—that is, whether his feet were six inches

or nineteen inches apart.   There is no claim made that by standing astride this hole the plaintiff could not handle himself so well, or take care of his clothing as well.   The sole claim is that he could have stood far-. ther from the cogwheels.

Moreover, the evidence shows that plaintiff was not at the fatal moment leaning forward in the act of oiling.   He does not so claim.   He says that he was standing astride the scuttle hole but does not know whether he was in the act of oiling or not; and the only other witness observing him at the exact moment says "he was standing facing the cogs, just finished oiling up, just fixing to turn."   It is also worthy of note that plaintiff did not attribute his injury to the uncovered scuttle hole until he filed his second amended petition.   Suppose his first contention, that the failure to guard the cogwheels was the negligence causing his injury, had prevailed and the scuttle hole had been covered and, notwithstanding this fact, the plaintiff had stood, as he did, with his feet nineteen inches apart instead of six to eight inches apart, would this have constituted contributory negligence on his part precluding a recovery?

This is the way the matter looks to me, but my brethren look at the facts in a different light and can see a connection between the uncovered scuttle hole and plaintiff's injury.   This leads me to conclude that reasonable men might differ and that the question was one for the jury.