W. E. McWHORTER, RESPONDENT, v. DAHL CHEVROLET CO. ET AL., DEFENDANTS; MORRIS HOFFMAN CONSTRUCTION CO., APPELLANT.— 88 S. W. (2d) 240.

Kansas City Court of Appeals. October 7, 1935.

1092

*Cowgill & Popham, Sylvan Bruner* and *John F. Cook* for respondent.

*Langworthy, Spencer & Terrell* for appellant.

REYNOLDS, C.—This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff, W. E. McWhorter, and for the loss of services and expense incurred on account of injuries to his son James B. McWhorter, a minor, as the result of a collision at the intersection of Eighteenth and Central Streets (public streets in Kansas City, Missouri) between an automobile in which plaintiff and his said son were riding, which automobile was at the time being driven in a westerly direction on Eighteenth Street, and an automobile being driven at the same time by one Edward M. Bowen in a northerly direction on Central Street.

The action was instituted in the Circuit Court of Jackson County on June 22, 1931. Upon trial had before a jury, a verdict was returned for plaintiff for $4450; and, from a judgment for plaintiff duly entered thereon in said sum against the defendant Morris Hoffman Construction Company (hereinafter called the defendant construction company), it, after a timely but unsuccessful motion for a new trial, appeals.

There is evidence tending to show that, at the time of the collision, the defendant construction company, as contractor, was engaged in constructing a two-story brick and concrete building on property located at the southeast corner of the intersection of the two streets mentioned; that the two streets mentioned, where they abutted upon the property upon which the building was being erected, were covered with bricks, mortar boxes, concrete mixers, cinder blocks, barrels, building material of various kinds placed and stored thereon by the defendant construction company for use in connection with the prosecution of its work in erecting the building; that Eighteenth Street was thirty feet wide from curb to curb with a ten foot sidewalk between the curb and the property line and abutted the building site on the north, and Central Street was thirty-six feet in width from curb to curb with a sidewalk twelve and one-half feet wide and abutted the building site on the west; that Eighteenth Street was upon a rising grade as it approached the intersection from the east, as likewise was Central Street as it approached from the south; that the defendant construction company was using at least, if not more than, one-half of both streets for the deposit and storage of the materials mentioned and had piled the same six or more feet high along the sides of the streets next to the building it was constructing and in such manner that the view of motorists traveling west on Eighteenth Street and north on Central Street was obscured to such an extent that it was impossible for them, in approaching and crossing over the intersection of said streets, to see one another until one of them reached a point at or past the center of the intersection; that, on Eighteenth Street, the materials were deposited in the street beginning approximately with the corner of

the building next to Central Street and running back about half the length of the building. Likewise, on Central Street, the materials deposited extended south from the southeast corner of the building at Eighteenth Street along the east half of Central next to the property line for quite a distance. There is likewise some evidence tending to show that materials were deposited upon the intersection.

There is evidence tending to show that the plaintiff, with his minor son James B. McWhorter, was riding in an Auburn car driven by L. H. Waters, an employee of the Dahl Chevrolet Company, and that, as they passed over the intersection of the streets mentioned, their car was run into by a car coming on the intersection from the south on Central Street, driven by one Bowen, and they were severely injured. The car in which plaintiff was riding was going west along Eighteenth Street at a speed variously estimated. The plaintiff placed it at eighteen to twenty miles per hour, while the driver thereof placed it at from eight to ten miles per hour. It was on the north side of Eighteenth Street, the driveway on said street being restricted by reason of the materials upon the south half thereof. Likewise, the traveled part of Central Street was restricted to a narrow way upon the west side thereof, by reason of the materials upon the east half thereof. When the car in which plaintiff was riding reached a point about the center of the intersection, the driver was able to obtain his first view of the car being driven by the said Bowen proceeding north on the west side of Central Street toward the intersection. His view thereof prior to reaching that point was cut off by the materials deposited on the streets between him and that car. There is evidence tending to show that the materials were also placed over in the intersection. The evidence tends to show that this was the first point at which one traveling west on Eighteenth Street could see a car coming north on Central Street. The evidence tends further to show that, when plaintiff first saw the Bowen car, that car was coming right into his car; that the car in which he was riding sped up, seeking to get out of its way; that the rear part thereof was struck by the Bowen car and thrown into the curb or against the pole at the northwest corner of the intersection; and that plaintiff sustained serious injuries, as did also his minor son James B. McWhorter, and plaintiff has been compelled to incur much expense on account of medical and other treatment for himself and his son on account of such injuries.

The plaintiff introduced in evidence sections 575 and 579 of chapter X, article 6 of the General Ordinances of Kansas City in force and effect at the time of the accident, reading as follows:

"No person, firm or corporation shall deposit upon any portion of any street, side-walk, alley or public place, refuse from or building material for any building or structure being erected on abutting

property so long as there shall be room upon such property for such refuse or building material; neither shall any such person, firm or corporation remove earth or rock from an excavation without first obtaining a permit therefor from the Commissioner of Street Cleaning, and before such permit shall be issued by the Commissioner of Street Cleaning, the applicant shall have obtained a building permit for such building or structure from the Commissioner of Buildings and Inspections. If there is not sufficient room upon the property upon which any building is being erected for the deposit of such refuse or material as is hereinbefore specified, then upon application to the Commissioner of Street Cleaning a permit may be granted for the deposit of such refuse or building material in the street in front of the property.

"All applications for permits provided for in this article shall be signed by the person or duly authorized agent of the person, firm or corporation who desires to use any street, sidewalk, alley or public place for any purpose in the preceding paragraph, and said permit shall state in plain terms the location and object of such permit."

"No person, firm or corporation shall use or occupy more than one-third of the roadway nor more than one-half of the sidewalk space or alley for the piling or storing of building material. Such use or occupation shall be confined to the roadway, sidewalk space or alley abutting on the property where the building or structure is to be erected. However, if the written consent and waiver of claims for damages against Kansas City is obtained from all the owners of property adjoining that upon which said building or structure is to be erected, then the Commissioner of Street Cleaning may extend the right to use or occupy such roadway, sidewalk space, alley or public place upon the terms and conditions herein provided, for those places which adjoin the property where the building or structure is to be erected."

The record shows an agreement by counsel that the defendant construction company had made application for and procured from the proper authorities of the city a permit under said ordinance for the use of one-third of the streets.

Plaintiff's petition was based upon the charges of both common law negligence and negligence in the violation of the city ordinance mentioned prohibiting the defendant from using more than one-third of that part of the roadways abutting on the property.

The defendant construction company answered (1) by way of general denial and (2) that, at the time of the injuries complained of by plaintiff, the automobile in which he was a passenger was being driven with his advice and consent at a wrongful and unlawful rate of speed and that, at such time, the car being driven by Bowen, with which the car in which the plaintiff was riding collided, was

1096

being driven by said Bowen at a wrongful and unlawful rate of speed and that, by reason thereof, section 43 of ordinance 2031, in force in Kansas City regulating the rate of speed of motor vehicles upon the streets, of Kansas City, was violated by the plaintiff, the driver of his car, and Bowen.

Section 43 of ordinance 2031 appears in the record as offered by the defendant construction company.

Plaintiff's petition as filed made not only the defendant construction company defendant but also made Bowen (the driver of the car which ran into plaintiff's car) and the Dahl Chevrolet Company (the owner of the car in which the plaintiff was riding) and Morris Hoffman (the manager of the defendant construction company) and Kansas City, Missouri (a municipal corporation) defendants, charging each with distinct acts of negligence upon their parts and also with several and joint negligence and acts of omission and commission on the parts of all other defendants and charging that plaintiff's injury was a direct result of all of said several and joint acts of negligence and acts of omission and commission, acting severally and concurrently with each other. However, during the progress of the trial and prior to the submission of the cause to the jury, the plaintiff dismissed the cause as to all of such defendants other than the defendant construction company; and the cause was submitted to the jury with the defendant construction company as the sole defendant.

At the close of all of the evidence, the defendant construction company requested an instruction in the nature of a demurrer directing a verdict in its favor, which was by the court denied. The case was submitted to the jury under instructions requiring facts to be found in the conjunctive sufficient to justify a verdict of negligence upon the part of the defendant construction company, if found by the jury as hypothesized in such instructions, not only in the violation of the ordinance but as arising out of a violation of its common law duty.

OPINION.

■ The defendant construction company assigns error upon this appeal relating chiefly to the action of the court in refusing its requested instruction directing a verdict in its favor and in giving instruction P-1 for the plaintiff, also in refusing to sustain a motion made by it during the trial to discharge the jury on account of alleged remarks and conduct on the part of plaintiff's counsel. It further assigns error upon the verdict of the jury, contending that it is excessive in amount and is the result of bias and prejudice. It also assigns as error the overruling of its motion for a new trial; but no point seems to have been made or carried forward in the points and argument made in its brief relating to such last assignment.

■ The first point made by the defendant construction company

is with respect to the refusal by the court of its requested instruction at the close of all of the evidence directing a verdict in its behalf. It contends that the court, in refusing such instruction, committed error. In support of its contention, it urges that there is no causal connection established by the evidence between the negligence proven on its part and the injuries complained of as resulting therefrom and that, therefore, such negligence is not to be construed as the proximate cause of such injuries.

It is true that mere proof of negligence and injury is not sufficient and that there must be proof also from which a causal connection appears between such negligence and such injury and proof that such negligence is the proximate cause of such injury. [Warner v. St. Louis & M. R. R. Co., 178 Mo. 125, l. c. 133, 134, 77 S. W. 67; State ex rel. Boeving v. Cox, 310 Mo. 367, 276 S. W. 869, l. c. 871; Iman v. Walter Freund Bread Co. (Mo.), 58 S. W. (2d) 477.]

Such is true whether the act of negligence arises from situations such as the violation of an ordinance or a rule of law, constituting such act negligence *per se*, or whether it arises from the violation of some duty under general principles of law. [Krelitz v. Calcaterra (Mo.), 33 S. W. (2d) 909; Larsen v. Webb (Mo.), 58 S. W. (2d) 967.]

For the purpose of its contention, the defendant construction company admits that there is evidence tending to show a violation by it of the ordinance of Kansas City in evidence, prohibiting the use of more than one-third of any abutting street to the property being improved with materials placed thereon, in its use of such streets to the extent of at least one-half thereof, and concedes that such violation was negligence *per se* but contends that there is no evidence that its violation of such ordinance or its negligence in so doing proximately caused or contributed to produce the injury complained of to plaintiff and his son, in that the facts in the record do not show that, absent such negligent act upon its part, the injury would not have occurred (Coble v. St. Louis-San Francisco Ry. Co. (Mo.), 38 S. W. (2d) 1031, l. c. 1036), and that the burden is upon the plaintiff to make such showing. [Kane v. Missouri Pac. R. Co., 251 Mo. 13, l. c. 28, 29, 157 S. W. 644.]

It contends that, by the use of one-half the streets, the lines of vision of drivers upon Eighteenth Street and Central Street, approaching the intersection thereof from the east and from the south to where the accident in question occurred, were barely less, if any, limited by the materials deposited in said streets in the excess space thereof used than they would have been had it occupied only the one-third of said streets to which it was limited by the ordinance; that there was nothing in the evidence from which it might be said that the injury would not have occurred if only one-third had been oc-

cupied; and that therefore it was only a matter of conjecture to say that the injury would not have occurred if it had not occupied one-half of said streets but had occupied only one-third of the same; that plaintiff had therefore not met the burden upon him to establish the causal connection between the negligence proven and his injury; and that it was error to submit the cause.

Ordinarily, the question of what is the proximate cause of an injury is a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact from all of the attending circumstances in evidence. [Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 S. W. 469; Kidd v. Chicago Rock Island & P. R. Co., 310 Mo. 1, l. c. 28, 29, 274 S. W. 1079.]

■ In this case, even though it be considered as one resting alone upon the negligence arising from a violation of the ordinance in question in the occupancy of greater space in the streets in question than limited by the ordinance, that the injury would not have occurred if it had not been for such excess occupancy became a question for the jury to determine from all of the facts in evidence; and it was not limited to a mere consideration of whether or not the lines of vision were or were not the same in the two situations. All of the circumstances in evidence were for its consideration in determining such question.

In a consideration of the question involved, it becomes important to understand in what manner an occupancy of space in excess of that limited by the ordinance contributed to or could have contributed to plaintiff's injury. What part did such occupancy by the defendant construction company of five feet more on Eighteenth Street and six feet more on Central Street than the ordinance in evidence prescribed, under all of the circumstances in evidence, have to do with bringing about plaintiff's injury?

It is claimed that such occupancy not only operated to cut off his vision of the approaching car at the intersection so that he could not learn of its approach and the vision of the driver of the approaching car so that such driver could not see the car in which plaintiff was riding but that it operated also to place the car in which plaintiff was riding in the immediate path of the car approaching on Central Street, when such came upon the intersection so that the car in which he was riding could not escape being struck thereby and so that it was struck thereby. There is evidence tending to show that the vision of the drivers and the occupants of the cars in question was cut off from one another by the materials deposited in the excess space used in both of said streets until the car in which plaintiff was riding reached a point upon the intersection of such streets about the center thereof. The evidence is conflicting as to whether any part of the intersection was used by the defendant

construction company with its material. However, there is evidence both to the effect that it was and; to the effect that it was not; and the fact that plaintiff could have no view of the car approaching from the south until reaching the center of the intersection, by reason of materials in the streets, strongly supports the evidence to the effect that it was used, along with the other parts of the streets. Otherwise, plaintiff could have had a view of the approaching car from the south before the car in which he was riding reached the center as aforesaid. There is evidence tending to show that, by reason of the excess space on Eighteenth Street used by the defendant construction company, the plaintiff was restricted to the use of a narrow strip on the north side thereof and, by reason of the excess space on Central Street used by the defendant construction company, the car approaching from the south on Central Street was likewise restricted to the use of a narrow strip on the west side of that street and came into the intersection on the wrong side of Central Street, at the west side thereof, where it struck the rear end of plaintiff's car before it could get off the intersection. The evidence tends to show that, as plaintiff reached the center of the intersection and had slightly passed that point, the car approaching from the south on Central Street was coming into his car and that his car immediately sped up to get out of the way but was unable to do so and was run into on the west side of the intersection, just as it was going off the intersection. It is apparent that, had the defendant construction company not occupied more of Central Street than that to which it was limited by the ordinance, the driver of the car thereon would not have been required; to use the extreme west side of said street but would have had at least six feet more roadway to the east and could have come upon; the intersection at or near the middle of the street rather than on the west and outer side thereof and, upon reaching the intersection, could have passed in the rear of plaintiff's car and would; thereby have avoided a collision therewith. It is apparent, also, that such driver would have had an earlier view of plaintiff's car and an earlier opportunity to stop his car. These and other matters in evidence were all for the consideration of the jury; and it could and did find therefrom that plaintiff's injury would not have occurred had the defendant construction company occupied only the east twelve feet of Central Street to which it was limited by the ordinance and that such injury would not have occurred at all, except for the use by the defendant construction company of a space in excess of the one-third to which it was limited.

The contention of the defendant construction company therefore that its negligent act in violation of the ordinance was not the proximate cause of plaintiff's injury, by the reason alone that no causal connection was shown between it and such injury, is not well made and

1100

must be denied. Such causal connection sufficiently appears from all of the facts in evidence.

■ Neither is the contention of the defendant construction company that the proximate cause of plaintiff's injury was the collision of the two automobiles, growing out of the negligent operation of the same by the drivers thereof and the lack by them of that degree of care required under the conditions existing at and surrounding the place of the accident, and that, for such reason, it cannot, in any event, be held for its negligent act, if established as the proximate cause of such injury, well taken. It can be held if its negligent act in any way contributed to such injury.

In Thompson's Commentaries on Negligence, section 75, volume 1, it is stated:

"If the concurrent and successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior and concurrent negligence of the other contributed to the injury."

This text was approved as a true statement of the law in the case of Miller v. United Railways Company of St. Louis, 155 Mo. App. 528, l. c. 541, 134 S. W. 1045.

■ In addition to the negligence of the defendant construction company in violating the ordinance in evidence, the petition counts on the common law negligence of such defendant in depositing materials in the streets covering a space of over one-half thereof in such a manner and to such an height as to create a dangerous obstruction therein and to make ordinary use thereof by the public dangerous and unsafe and to obstruct and cut off the view of the streets by operators of cars thereon and to prevent them from seeing one another and the approach and movement of one another's cars and in negligently maintaining such dangerous and unsafe condition upon the streets at the time of the accident and for many days prior thereto at said point when it knew, or by the use of due care could have known, of such condition long enough prior to the accident to have, in the exercise of due care, removed and remedied it but, in which respect, it negligently failed.

We will therefore consider the point now under consideration raised by the defendant construction company as relating to both acts of negligence charged, that is to both the negligence charged in its violation of the ordinance and the negligence charged in its violation of its common law duty.

The maintenance of the public streets is not only for the benefit of the owners of adjoining property but for the general public; and such owners, when they undertake to use such streets, assume the duties incident to their possession as owners of adjoining property.

The right to obstruct the public in the use of the streets does not arise out of any title in the property owner adverse to the public but arises as an easement of necessity, subordinate to public control and limited by the necessity under which it arises; and such right must be reasonably exercised. It is not an exclusive right. [Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516, 1. c. 522; Shafir v. Sieben (Mo.), 233 S. W. 419, 1. c. 423, 424.]

The defendant construction company did not obtain its right to use the streets through the ordinance. It had the right to their reasonable use without the ordinance. The ordinance merely regulated such right by limiting its operation to one-third of the streets. It did not add any right to use the streets or the one-third thereof in an unreasonable manner. [Searcy v. Noll Welty Lumber Co., 295 Mo. 118, 243 S. W. 318.]

It was the duty of the defendant construction company in the use of the streets to have so used the same as not to have unreasonably restricted the use thereof by the public but to have protected the public and the plaintiff as one of the public, in the reasonable use made of said streets; and such is true although the immediate and direct cause of the plaintiff's injury might have been from an independent act of a third person.

". . . we consider the rule to be well established in this state that where the direct and immediate cause of the injury, although an independent act of a third person, belongs to a class against which the defendant is legally bound to protect the plaintiff as one of the general public, defendant will be liable in damage for such injury . . ." [Shafir v. Sieben, supra.]

That in this case at bar the injury to plaintiff was one against which the defendant construction company was legally bound to protect him as a member of the public, we think there can be no doubt. The plaintiff was lawfully upon the highway as one of the public and was entitled to be protected in his reasonable use thereof.

The causes of plaintiff's injury necessarily consist of two elements, (1) the presence of the car in which he was riding in the path of the approaching automobile driven by Bowen, which car struck the car in which plaintiff was at the time, and (2) the blow delivered to plaintiff through the striking of the car in which plaintiff was riding by the Bowen car. Both of these causes were present, in full operation, at the very instant of plaintiff's injury. From the allegations of the petition, the evidence, and the finding of the jury, it is to be gathered that the position of the car in which plaintiff was riding in the path of and in front of the approaching car which struck it was due to the wrongful act of the defendant construction company in obstructing the streets and in forcing the driver of the Bowen car to travel upon the extreme west side of Central Street and that

the blow occasioning plaintiff's injury was struck by the wrongful act of Bowen when he ran his car into the car in which plaintiff was riding. Neither act could or would have occurred without the operation of the other at the same time. Both were commingled in the single act of the injury. [Shafir v. Sieben, supra.]

It appears that the injury complained of would not have happened but for the negligent act of the defendant construction company in obstructing the streets in the manner and to the extent it did in the first instance and in thereafter maintaining such obstruction and that such negligence is therefore to be viewed as a proximate and efficient cause of the injury, although another independent act intervened in point of time subsequent thereto, concurring and operating therewith.

The act of the defendant construction company in blockading the streets in the manner and to the extent it did openly operated in connection with the act of Bowen in traveling upon the side of the street west of the center thereof and in coming upon the intersection at the place he did and upon the wrong side thereof—to say nothing of the manner in which it piled the materials so as to obstruct and cut off the view in its use of both the six feet excess space therein and the space to which it was limited by the ordinance, reaching therewith the center of the street and forcing Bowen to use the west side thereof and to come on the intersection at the left side thereof instead of at or near the center.

There was evidence from which the jury could have found that the intersection itself was obstructed. As to whether it was or not, there was evidence both ways. The jury had the right to take the view that it was obstructed and that, being so obstructed, Bowen's operation of his car was further restricted. Without such obstruction thereon and upon the excess portions of the streets used, he might have had an earlier view of plaintiff's approaching car and have so managed his car as to have avoided injury to plaintiff.

Had the defendant construction company eliminated its act of negligence, it is apparent that Bowen could have avoided striking plaintiff's car by having a wider space in which to operate his car and could have come upon the intersection at or near the center thereof and have avoided plaintiff's car by turning or passing to the rear thereof. Whether he would have done so was a question for the jury.

Thus the occupation by the defendant construction company of the streets in question in excess of that limited by the ordinance and in the manner and to the extent it did operated to place plaintiff in the path of the approaching car and was instrumental in effecting the collision between the two cars and the consequent injury to plaintiff; and it, in such way, not only contributed to but became a proximate cause of such injury.

■ It is true that the connection between a defendant's negligence and a plaintiff's injury may, in some instances, be broken by an intervening cause. In order to excuse the defendant, however, such intervening cause must be either a superseding or responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury; but the connection is not actually broken if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely proper; and the defendant's negligence remains an essential link in the chain of causation. If a defendant is negligent and his negligence combines with that of another or with any other independent intervening cause, he is liable, although his negligence is not the sole negligence or the sole proximate cause and although his negligence without such other independent intervening cause would not have produced the injury. [O'Bauer v. Katz Drug Co. (Mo. App.), 49 S. W. (2d) 1065.]

In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding; and it is the province of the jury to look at such succession of events or facts and ascertain whether they are naturally and properly connected with one another by a continuous sequence or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time. [Milwaukee, St. Paul Ry. Co. v. Kellogg, supra; Kidd v. Chicago, Rock Island R. Co., supra; Hood v. Baltimore & Ohio R. Co., 302 Mo. 609, 259 S. W. 471; Laughlin v. Kansas City Southern R. Co., 275 Mo. 459, 205 S. W. 3; Johnson v. Ambursen Hydraulic Construction Co., 188 Mo. App. 105, 173 S. W. 1081; Gilman v. Fleming (Mo. App.), 265 S. W. 104.]

In respect to the common law duty of the defendant construction company, it should have anticipated that a traffic accident was likely to occur when it is considered that Eighteenth Street, running from east to west, is uphill and that Central Street, running from south to north, is uphill, and that travelers on Central Street were being compelled to use the wrong side of the street on coming upon Eighteenth Street and that between these streets, at a point where they intersect at the top of the hills or near thereto, it had used at least the inside halves of both streets for the storage of building materials and other things which it piled so high (five to ten feet) that it was impossible for motorists approaching from the south on Central Street and from the east on Eighteenth Street to see one another until they were more than half way across this narrow intersection.

1104

This was not a reasonable use of the streets. The defendant construction company had no right to pile this building material so at this dangerous place.

The defendant construction company at common law had no right to the exclusive use of the streets or to make any unreasonable use thereof so as to block completely the view of motorists thereon. Neither did it acquire such right under the ordinance.

Even though the defendant construction company had used, say, one-half of the intersection and one-half of the streets for the storage of its material, the collision in all likelihood would not have occurred if the material had been piled only to a reasonable height so that approaching motorists could have seen the tops of the cars approaching upon the respective streets.

The liability of a person charged with negligence, however, does not depend on the question whether, in the exercise of reasonable prudence, he could or should have foreseen the very injury complained of; but he may be held liable for anything which, after the injury, appears to have been a natural and proper consequence of his act or omission. [Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766; Obermeyer v. F. H. Logeman Chair Mfg. Co., 229 Mo. 97, 129 S. W. 209.]

■ The further contention of the defendant construction company that the obstruction placed by it upon the streets created a condition of which the drivers of the two cars were bound to take notice and that, because of their failure to do so combined with the excessive speed with which their automobiles were driven, such defendant's act in so placing such obstruction cannot be held to be the proximate cause of plaintiff's injury and such defendant can not be held liable therefor but the drivers of the cars only can be held liable therefor must be held to be without merit. Such condition was, upon sufficient evidence, by the jury found to be a negligent condition contributing to plaintiff's injury. Such contention has been disposed of by what has already been said herein.

It follows from what has been said and from the conclusions reached that the plaintiff's requested instruction for a directed verdict at the close of the evidence upon the trial was properly ruled by the trial judge and was properly denied.

■ The second point made by the defendant construction company is that the trial court erred in giving instruction P-1 at the request of the plaintiff. Such contention appears to be based upon three grounds, (1) that there was no evidence to support the hypothesis contained in the instruction that the intersection of the streets in question was obstructed and (2) that there was no evidence upon which to base the hypothesis that the view of the driver of the northbound car approaching on Central Street was obstructed by the

building materials upon the streets and (3) that there was no evidence that the occupation of the streets with building materials by the defendant construction company in excess of one-third of the width of said streets was the proximate cause of plaintiff's injury or that such contributed thereto. An examination of the record shows that none of such grounds are well taken. There is not only direct evidence in the record to the effect that the intersection itself was obstructed by materials placed thereon by the defendant construction company; but proof of facts was made therein from which such further fact may be reasonably inferred.

Likewise, with respect to the second ground, there is ample evidence in the record to justify the submission to the jury of the hypothesis complained of. There is not only direct evidence to the effect that the view of the driver of the northbound car was obstructed by the materials placed upon the streets, but proof was made of many facts from which the inference might be reasonably drawn that it was so obstructed.

It is unnecessary to discuss the third ground, to the effect that there was no evidence to show that the use of the excess space above one-third of the width of the streets with materials deposited thereon by the defendant construction company was the proximate cause of plaintiff's injury or contributed thereto. Such question has been adversely disposed of to such defendant's contention in the consideration and determination of its first point herein. Its contention in this regard is therefore again ruled against it.

 The third point of the defendant construction company is to the effect that the trial court erred in refusing its motion to discharge the jury, such motion being based upon improper remarks and conduct of plaintiff's counsel upon the trial during the course of his cross examination of one of such defendant's witnesses. Whatever the remarks and conduct complained of may be, they do not appear to have been preserved in the record in any proper manner for review by us. Such remarks appear to have been very largely questions asked by plaintiff's counsel of a witness upon the trial and remarks cross-fired between plaintiff's counsel and the counsel of the defendant construction company during such examination, which cross-firing appears from the record to have been provoked by a remark of such defendant's counsel injected into such examination. No objection to the court appears to have been made by the defendant construction company at the time to any of the questions asked the witness upon the examination of which it now complains.

The only remark of plaintiff's counsel to which any objection was made, other than as the motion for the jury's discharge might be regarded as an objection, was to the following addressed by him to the court in response to a suggestion by the court, "Yes, sir, be-

cause after you did that the lawyer insisted on testifying some more,'' which was objected to by the defendant construction company in the following words: ''I object to that remark.''

In view of the running cross-fire between counsel preceding this remark, which had been started by counsel of the defendant construction company, such defendant has no ground of complaint of such remark, even had it been prejudicial. We do not regard that it was so. It is not apparent that it was; and the objection, as made thereto, does not meet the requirements necessary to amount to an objection. None of the other matters complained of are open to review by us, in the absence of objections made thereto upon the trial at the time they occurred appearing in the record. [Ward v. Martin, 294 Mo. 408, 242 S. W. 966; Quint v. Loth-Hoffman Construction Co. (Mo. App.), 247 S. W. 236, l. c. 238.] There is therefore nothing in the record upon which the trial court may be convicted of error in overruling the motion of the defendant construction company to discharge the jury or either of said motions.

■ It is finally claimed that the verdict is excessive. It must be remembered, however, that plaintiff not only sued for personal injuries, physical pain and suffering in connection therewith, and his own impaired service following therefrom, but for the loss of the services of his minor son (about nineteen years of age) and the cost and expense of medical service for his minor son and himself. That plaintiff sustained serious injury to his left arm, his right hip, his lower back, and his head, from which he was still suffering at the trial some three years later, is abundantly shown by the evidence. That he suffered great pain on account of his injuries and was still suffering therefrom at the time of the trial appears. He lost about twenty pounds in weight, which he had not recovered at the time of the trial. He received a blow upon his head which occasioned a ringing sensation therein, from which blow his hearing was materially affected. He became afflicted with headaches and nervous and dizzy spells as results thereof and often turned blind and had to stop his work and sit down. He could not lift his left arm without great pain. He testified that, when he used it, it hurt like pulling teeth; that he had to let it hang down; and that it had become crooked. He could not stoop over without great pain in his right hip and his lower back. He had been largely incapacitated for the prosecution of his work and labor, that of a carpenter. Not only so, but it is likewise shown that the son was seriously injured and disabled and incapacitated for labor and that his injuries were of a permanent nature and that the value of his services to plaintiff was thereby greatly diminished.

There is evidence tending to show that both plaintiff and his minor son required much medical attention and treatment, for which plaintiff became liable,

We are not impressed, under the record, with the contention of the defendant construction company that the verdict is excessive or that it is the result of bias and prejudice. We think there is evidence fully justifying it; and nothing appears from which it may be suggested to be the result of other than a fair consideration of the evidence by the jury. Such contention must therefore be denied.

█ We have disposed of the assignments and points made by the defendant construction company. It is unnecessary to dispose of questions raised by plaintiff upon this appeal with reference to the noncompliance by such defendant with the rules of this court in the making of an assignment of errors.

The judgment of the lower court should be and is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.