ELLEN DICKERSON, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 44705—286 S. W. (2d) 820.

Court en Banc, January 9, 1956.

Rehearing Denied, February 13, 1956.

*Lloyd E. Boas* and *Robert E. Staed* for appellant.

740

*John T. Murphy, Jr.*, and *Morris B. Kessler* for respondent; *Joseph Nessenfeld* of counsel.

742

[822] EAGER, J.—This is a suit for damages for personal injuries. The trial resulted in a verdict and judgment for plaintiff in the sum of $7,500. On appeal to the St. Louis Court of Appeals the

judgment was reversed outright. That opinion appears at 271 S.W. 2d 201. The case was transferred here by order of this court under the provisions of § 10, Art. V of the Missouri Constitution, 1945; it is, therefore, here as though upon an original appeal to this court. The City of St. Louis was originally a defendant but a verdict was directed for it, and no appeal was taken by the plaintiff from the judgment [823] entered against the present appellant alone. The basis of the ruling of the Court of Appeals will be shown and discussed hereinafter.

At about 8:00 A.M., on March 29, 1949, Ellen Dickerson was a passenger on one of defendant's buses on her way to work. The bus, going south on Sarah Street, stopped at the Chouteau Avenue intersection, and then turned right or westward into Chouteau where there was a regular bus stop. It was at this stop that plaintiff wished to alight. The bus driver testified that the traffic on Sarah Street prevented him from making a "wide" turn into Chouteau, but that he stopped with the front of his bus "up at" the "Bus Stop" sign. One witness said the bus made a normal turn. It is clear that the bus was stopped with its right side some distance from the north curb of Chouteau. This fact is material, so we note here that: plaintiff said the distance was "about ten feet"; a witness who helped measure the distance immediately after the crash which ensued said it was 11½ feet; one passenger said about 9 feet, others much less; the driver said 3 feet at the rear and 4½ feet at the front; one witness testified that the left side of the bus was within about one foot of the center of the street. In any event, when the bus stopped and the doors were opened two men were waiting to get off ahead of plaintiff at the rear door; they had alighted, one had just walked to the curb, and plaintiff was still on the top step when the bus was struck violently from behind by a city street flushing truck, at about its center, and knocked several feet, more or less straight west. Plaintiff was thrown into the street by the impact, alighting on the lower part of her back with her right arm apparently under her and her feet toward the bus. She was picked up, taken to the curb, and rested there until police officers and an ambulance came. Her injuries will be described later. The driver testified that people were also getting off at the front door of the bus. There were no cars parked along the north curb of Chouteau for 250 feet from the corner. The distance of the rear of the bus from the corner was variously estimated at from 8 to 60 feet. The time which elapsed between the stopping of the bus and the impact was variously estimated at "about 2 seconds" or longer by the plaintiff, 15-20 seconds by the bus driver, and "around 20 seconds" by a passenger.

The driver of the city truck (going west on Chouteau) testified: that it was an old model Mack truck; that he slowed at the Sarah intersection and shifted gears, saw the bus making a righthand turn,

and proceeded on across the intersection; after he crossed he shifted back from third to fourth gear, necessarily looking down momentarily as he did so; at that time the bus appeared to be moving straight westwardly; as he looked up again, and moving at 10-15 miles per hour, he saw the bus stopped about 10-15 feet ahead of him and about 10 feet out from the curb, practically in the line in which he was traveling; that its left wheels were across the south rail of the westbound street car track; that he immediately put his foot on the brake, but had not succeeded in making a "full application" of the brakes by the time of the collision, and that he struck the bus about 60 feet west of Sarah Street, at a speed of about 12-15 miles per hour; that the crash was violent and loud; that the truck was not quite as wide as the bus; that he did not swerve the truck nor attempt to use the emergency brake. There was testimony from this witness on cross-examination in the nature of estimates or guesses (without actual tests) that he thought he could stop the truck in 9-10 feet at a speed of 12-15 miles per hour. The truck driver was plaintiff's witness. This driver and his supervisor measured the distance of the bus from the curb after the collision as 11½ feet. There was evidence that the bus came to a "normal" stop, except for its position. Some of the other passengers on the bus were shaken up rather violently, and the bus driver testified that several went to the hospital. Plaintiff offered in evidence an ordinance of the City of St. Louis providing that "no person except in an emergency or to allow another vehicle to cross its path [824] shall stop a vehicle in any street except near the right-hand curb * * *." The theory upon which a verdict was directed for the city was that it was, at the time, performing a governmental function.

On these facts the Court of Appeals held that the negligence of the driver of the city truck constituted an "intervening efficient and proximate cause" which broke the chain of events, and rendered any negligence of the bus driver too remote to operate as a proximate cause We disagree for the reasons stated herein. In this matter questions of proximate cause and efficient, intervening cause are inseparably interwoven. They are not easy of solution, and we repeat the oft-used principle that in this determination each case must stand on its own individual facts; the final result boils down largely to a construction of the evidentiary situation.

Generally, we may say that an efficient, intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury. 65 C.J.S., Negligence, § 111, pp. 685-691; Hogan v. Fleming, 317 Mo. 524, 297 S.W. 404; but it may not consist merely of an act of concurring or contributing negligence. (id.) Such definitions are often somewhat difficult to apply. Indeed it has been said that an intervening cause is merely proximate cause

746

flowing from a source not connected with the defendant. Shearman & Redfield on Negligence, (Rev. Ed.) § 37, p. 99. The picture becomes clearer when we consider the practical test of proximate cause. A proximate cause is generally considered to be that cause or act (as of negligence) of which the injury was the natural and probable consequence. Shearman & Redfield on Negligence, (Rev. Ed.) § 55, p. 94; Gray v. Kurn, 345 Mo. 1027, 137 S.W. 2d 558; Snyder v. Jensen, Mo., 381 S.W. 2d 802. Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable. If some injury is reasonably to be anticipated or is reasonably probable as a result of the defendant's act of negligence, then the added act of a third person, though he also be negligent, does not break the chain of causation and defendant is liable; in such event the act of the third person is mere concurring negligence. See generally: Shearman & Redfield, supra, pp. 101-103; Snyder v. Jensen, Mo., 281 S.W. 2d 802; Floyd v. St. Louis Public Service Co., 280 S.W. 2d 74; Cox v. Wrinkle, Mo., 267 S.W. 2d 648; Champieux v. Miller, Mo., 255 S.W. 2d 794; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W. 2d 35. In this situation (if defendant was guilty of negligence) we, therefore, arrived at the relatively simple question: could defendant's driver reasonably anticipate that *some* injury to one or more passengers was probable when he stopped the bus where he did?

We may say here very briefly that on this evidence a clearly submissible case of negligence was made against defendant, both under the ordinance and the common law. Plaintiff was entitled to the most favorable view of the evidence, and one could hardly deny that the stopping of a bus 10 to 11½ feet from the curb for discharging passengers on a busy city street was a thing which some reasonable minds might consider a hazardous thing to do; nor do we think that 10-11½ feet out was "near the curb" as required by the ordinance; no emergency is claimed. No explanation was made as to why the driver could not have driven on further down Chouteau to pull in to the curb, with no cars parked for 250 feet. The violation of an ordinance is, of course, negligence per se. Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W. 2d 761, and cases cited.

Having thus determined that there was, at least, a submissible issue on defendant's negligence, we must decide whether the driver, at the time of stopping as he did, could have reasonably foreseen or anticipated *some* probable injury to his passengers from so doing. He was, of course, held to the exercise of the highest [825] degree of care. Many of the cases cited and to be cited herein hold that it is not necessary to show that he should have anticipated the precise injury which occurred. While there is no Missouri case on these precise facts the following cases present somewhat analogous situations in

which the liability of the original negligent party was upheld; in other words, where the act of the defendant was held to be *a* proximate cause, since he might reasonably have anticipated that some injury might ensue. Floyd v. St. Louis Public Service Co., Mo., 280 S.W. 2d 74; Matthews v. Mound City Cab Co., Mo. App., 205 S.W. 2d 243; Snyder v. Jensen, Mo., 281 S.W. 2d 802; Cox v. Wrinkle, Mo., 267 S.W. 2d 648; Champieux v. Miller, Mo., 255 S.W. 2d 794; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W. 2d 35; Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W. 2d 831; Wood v. St. Louis Public Service Co., (Banc), 362 Mo. 1103, 246 S.W. 2d 807; Cade v. A.T. & S.F. Ry., 364 Mo. 620, 265 S.W. 2d 366; McCloskey v. Renne, 225 Mo. App. 810, 37 S.W. 2d 950; Jackson v. City of Malden, Mo. App., 72 S.W. 2d 850; Byars v. St. Louis Public Service Co., 334 Mo. 278, 66 S.W. 2d 894; Creech v. Riss & Co., Mo., 283 S.W. 2d 554; Zuber v. Clarkson Construction Co., 363 Mo. 362, 251 S.W. 2d 52. It would be impossible to discuss all these cases factually within a reasonable compass. One (Matthews) involved the sudden stopping of a cab in the traffic lane of a city street; others (Cox and Champieux) involved parking on highways; Floyd, McCloskey and Jackson involved the improper parking of trucks on city streets; Domitz involved obstruction of the view of an intersection by the parking of two large vans; most, if not all, of those cases involved concurrent negligence of two or more persons. These cases illustrate the application of the doctrine of proximate cause under somewhat analogous situations, particularly including the element of reasonable foreseeability. Perhaps the nearest in point on the facts are the Floyd, Matthews and McCloskey cases, *supra*. In some of these cases injury was even less to be anticipated than in ours, as in the Floyd case; in others the difference is only one of degree, as in the cases involving stopping on a highway, or the suddenness of a stop on a city street. We do not disagree with the Court of Appeals on its statements of the law, but only upon the application of the law to these facts.

Counsel for defendant cite sundry cases on the questions of intervening cause and proximate cause; among these are: DeMoss v. Kansas City Railways Co., 296 Mo. 526, 246 S.W. 566; Madden v. Red Line Service, Mo. App., 76 S.W. 2d 435; Wright v. K.C. Structural Steel Co., 236 Mo. App. 872, 157 S.W. 2d 582; and Smith v. Mabrey, 348 Mo. 644, 154 S.W. 2d 770. We have considered these cases and do not believe that the principles of law announced there differ from those we have expressed. The factual situations all differ, of course, and while it may plausibly be argued that the cases so cited should be persuasive here, we have concluded that the trend and meaning of all the Missouri decisions is more consonant with a holding of proximate causation on the part of defendant here; we do so hold. In that connection we note that according to the evidence most favorable to plaintiff the bus stopped with its left side near the middle of

the street and thus completely obstructing the main traffic lane; that the driver should reasonably have considered the probability of injury, not only from careful drivers of other vehicles, but from negligent ones (Champieux v. Miller, Mo., 255 S.W. 2d 794; Snyder v. Jensen, Mo., 281 S.W. 2d 802; Cox v. Wrinkle, Mo., 267 S.W. 2d 648) unless the act of the other driver was so "extraordinary" as not to be reasonably foreseeable (id.). Indeed, even a criminal act has been held not to constitute an independent, intervening cause. Gaines v. Property Servicing Co., Mo., 276 S.W. 2d 169. Here, certainly, the driver need not have contemplated the precise thing which occurred (Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W. 2d 35, and other cases cited) but he might well have considered, for instance, the danger of injury to alighting passengers by other vehicles swerving to the right to miss the bus, [826] and perhaps other contingencies. We need not discuss the extent of the negligence of the driver of the city truck; we may assume that he was negligent to some extent but, under all the evidence, reasonable minds certainly might differ as to whether his action was so "extraordinary" as to be entirely outside of any reasonable anticipation. Counsel argue that the bus had been stopped long enough for the driver of any other vehicle to see it; the most favorable testimony for plaintiff on this was "about two seconds"; the driver of the bus said 15-20 seconds and other versions differed. There was rather clear evidence that it had been stopped just long enough for one passenger to alight and walk 10-11 feet to the curb. But, again we note that so long as passengers were alighting and walking in the street *some* danger existed, and the time element becomes less important. Defendant's duty to exercise the highest degree of care for the protection of all its passengers continued throughout the unloading process (Gott v. K.C. Railways, Mo., 222 S.W. 827) and if it was negligent in stopping the bus where it did, its negligence continued to the time of the impact. The argument of defendant's counsel to the effect that the collision would still have occurred had the bus been parked within a foot or two of the curb is too speculative for consideration here; the evidence does not even show the width of the city truck. Usually, of course, the question of proximate cause (either sole or concurring) is a jury question. Cox v. Wrinkle, Mo., 267 S.W. 2d 648; Floyd v. St. Louis Public Service Co., Mo., 280 S.W. 2d 74. We hold that it was such here, and that defendant's motion for a directed verdict was properly overruled.

■ This necessarily brings us to a consideration of the specific errors now urged by defendant. First, it contends that it was error to permit Dr. Cohen, one of plaintiff's attending physicians, to testify that plaintiff was "perfectly honest" about her symptoms and "not feigning anything." As to the latter question, there was no objection at all, and as to the first, the objection (if sufficient in form) came after the answer and there was no motion to strike. Considered more

broadly, however, we find that the questions followed questions by defendant's counsel to this witness asking if "some people are able to feign that sometimes" (i.e. pain, wincing, etc.), and to Dr. Wennerman, another attending physician, asking if "sometimes those things can be feigned." Both of those questions were answered generally in the affirmative. Certainly plaintiff's counsel was entitled to interrogate Dr. Cohen on re-direct as to whether, in his opinion, the plaintiff was in fact "feigning"; the question as to whether he believed she was "perfectly honest," considered in its context, could only have reference to the likelihood of "feigning," and we think it was so understood. The question could perhaps have been better worded, but, under the circumstances, this was not reversible error. And see Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W. 2d 122.

■ The next assignment is of error in excluding the report of a supposed physical examination of plaintiff. According to a statement of defendant's trial counsel, he had subpoenaed "the entire employment and medical record" of plaintiff from her last employer. The papers were produced by a witness whose capacity was not shown; they were not offered in evidence as a whole, but on specific inquiries the witness read the dates of employment and termination, the reason for leaving, notation of a lay-off, comments on plaintiff's skill, attention, etc., all without objection. The witness stated that the papers or file were the complete employment record of plaintiff, and (immediately following the above) that "the record" was one kept in the ordinary course of business. This witness was asked no questions concerning a physical examination of plaintiff. Counsel then offered to read a supposed report of a physical examination of plaintiff which he stated was in the employment file and signed by one "Martin F. Kouri" (wholly unidentified) and which, among other things, stated under "Remarks": "Low back injury 3-29-49. Recovery about complete." To this offer plaintiff's counsel objected on the [827] ground that the tendered evidence was hearsay and incompetent for any purpose. The court sustained the objection. Thereafter counsel for plaintiff cross-examined the witness concerning plaintiff's pay-rate and salary and her failure to receive any salary for one week. These questions in no way involved the supposed physical examination.

Defendant insists that because there was no objection to the records as a whole, and because of the cross-examination, this report should have been received in evidence, citing Dorn v. St. Louis Public Service Co., Mo. App., 250 S.W. 2d 859, and 31 C.J.S., Evidence, § 774. These and similar authorities are based either on the theory that the whole of a book, document or record has already been offered and received in evidence, or that one party has been permitted to offer previously, without objection, evidence of the *same type or character*. The latter limitation is shown in the Dorn opinion at 250 S.W. 2d l. c. 866. The

rule (or rules) and its limitations is discussed at some length in Wigmore on Evidence, (3rd Ed.) Vol. 1, pp. 304 et seq.; and see also, Longmire v. Diagraph-Bradley Stencil Machine Corp., Mo. App.; 176 S.W. 2d 635, l. c. 646-7. Much discretion rests in the trial court in such matters. 31 C.J.S., Evidence, § 190, p. 914. We do not think that an unidentified report of a physical examination (with its supposed history) is so clearly evidence of the same character as pay-rates, period of employment, etc., as to make the rule applicable here. And the principle, it seems, should only be applied to prevent "plain prejudice" (Wigmore, *supra*.) It does not seem that plaintiff here led the defendant into any ambush by a failure to object. Defendant has not briefed the question as to whether the so-called report of physical examination was admissible under the Business Records Act, § 490.680, RSMo 1949, V.A.M.S.; to say the least, however, it is doubtful that it was admissible as such, for lack of a sufficient showing of the elements required. Kraus v. K.C. Public Service Co., Mo., 269 S.W. 2d 743.; Conser v. A.T. & S.F. Ry., Mo., 266 S.W. 2d 587; Gray v. St. L. & S.F. Ry., 363 Mo. 864, 254 S.W. 2d 577. And the court is expressly given much discretion under the very wording of that statute. We hold that the exclusion of this evidence was not error.

Defendant insists that Instructions 1 and 2 given on behalf of plaintiff were prejudicially erroneous; the first of these set out the substance of the ordinance requiring vehicles to be stopped "near the right-hand curb," and further submitted: that if the jury found that the bus was stopped approximately 10 feet from the curb for the purpose of unloading passengers, such constituted negligence; and that if the jury further found (here hypothesizing briefly the fact of the collision) that defendant's negligence, if any, "directly contributed and concurred" with the negligence of the driver of the truck, if any, in causing plaintiff's injuries, then plaintiff should recover. The principal complaints of this instruction are that it assumes that 10 feet away is not "near the curb" and that such constitutes negligence, that it ignores the fact that "near the curb" means only as near as practicable, and that it does not properly require the jury to find that a violation of the ordinance was the proximate cause of plaintiff's injuries. Counsel also insist that the violation of the ordinance could not have been the proximate cause because of the efficient, intervening cause shown by plaintiff's own evidence. We have already ruled on the substance of this latter contention. Under all the evidence here we think that there was really no substantial doubt that 10 feet was not "near the curb"; the only real question was whether the bus was stopped 10 or 11 feet from the curb or approximately 2 to 4 feet from the curb; it is unnecessary to decide here whether in other situations the phrase "near the curb" might mean as near "as practicable," for, regardless of any supposed difficulty in making the turn, this driver had 250 feet of clear curb line in which to get "near the curb";

moreover, he testified that he did in fact stop the rear of the bus 3 feet from the curb and the front 4½ feet from the curb; this would seem to [828] show that, on his own theory, 10 feet was not as near "as practicable." We hold that stopping the bus 10 feet or more from the curb under these circumstances, which spot was directly in the main line of traffic, was a violation of the ordinance, and that the jury might properly be so instructed. See Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W. 2d 914, 919-920; Benoist v. Driveaway Co., Mo. App., 122 S.W. 2d 86, 90; Gaines v. Property Servicing Co., Mo., 276 S.W. 2d 169. The violation of an ordinance is per se negligence, as heretofore noted. The submission of causal connection, though somewhat abbreviated, we hold sufficient. Defendant's negligence need only be a proximate cause, and not necessarily the sole proximate cause. Gaines v. Property Servicing Co., Mo., 276 S.W. 2d 169; Floyd v. St. Louis Public Service Co., Mo., 280 S.W. 2d 74; Byars v. St. Louis Public Service Co., 334 Mo. 278, 66 S.W. 2d 894. In the case of Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W. 2d 831, this court said that the phrase "directly contributed to" was equivalent to proximate cause, quoting from another opinion which construed the term as negativing any independent, intervening cause; and see Gaines v. Property Servicing Co., Mo., 276 S.W. 2d 169, 175. We think that on these facts the submission of proximate cause sufficiently negatived the defense of an intervening cause (including the element of anticipation) and that if defendant wished a specific instruction on that defense it should have requested one. It did ask for and receive a very complete instruction on sole cause, and perhaps did not wish an inference of its own negligence which the other instruction might have raised. We do not regard this instruction as a model, but hold that it did not constitute reversible error.

Instruction No. 2 submitted common law negligence in stopping the bus approximately 10 feet from the curb, if the jury so found, upon the theory that the jury might find that such was not a reasonably safe place to discharge passengers, and that such act might be thus found to constitute negligence; it hypothesized the collision and submitted the question of causation substantially as in Instruction No. 1. The point now made that the submission was defective on the question of causation has already been covered. The remaining objections are that the instruction failed to hypothesize the negligence of the driver of the truck, as shown by plaintiff's own evidence, and that generally the instruction was a "roving commission." Cases are cited to the effect that complicated, factual situations shown in evidence may not be ignored (Ferdente v. St. Louis Public Service Co., Mo., 247 S.W. 2d 773) and generally that the facts must be hypothesized (Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541, and other cases). We need not quarrel with the principles announced. Much has since been said and written about the Yates opinion, and

we note here particularly the cases of Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496, and Knight v. Richey, 363 Mo. 293, 250 S.W. 2d 972. The gist of the later opinions is that only those facts essential to a finding need be hypothesized, and these, of course, vary in every case; more is required in a case where there are "two or more divergent sets of essential facts." In this case we do not feel that the details of the truck driver's supposed negligence were essential, because defendant could be held liable under the authorities already cited, whether he was in fact negligent or not. Moreover, defendant fully hypothesized his alleged negligence in its sole-cause instruction which was not in conflict with the present instruction. We note here that defendant's liability is not based alone on the danger of a collision with that particular truck, but upon the probability of *any injury* to its passengers. The only fact which was claimed to make the place of stopping unsafe was the distance of the bus from the curb, and this was sufficiently hypothesized. We think that the "connection" between the stopping of the bus in the main traffic lane and the collision was hardly a controverted issue at the trial. In this instruction the jury was specifically required to find that defendant's acts constituted negligence. We hold that the instruction was not prejudicially erroneous.

■ [829] The last contention of defendant is that the verdict was excessive. Its amount was $7,500. The age of plaintiff is not stated, but she was a British "war-bride" and apparently was comparatively young. Her prior health was relatively normal. The evidence is uncontroverted that, in addition to various bruises, minor injuries, headaches and shock, she sustained: a strain of the lower back, an injury to the coccyx which at the time of trial was thought to be permanent, at least without an operation; some vaginal bleeding, pain in both sides for about two years (apparently connected with the female organs) and pain and weakness in her right arm for a long period with a remaining weakness in it to the time of trial; she had no fractures; her principal complaint at the time of trial was a continuing "dull, throbbing pain" in the region of the coccyx (or end of the spine) which bothers her "every day," and which "hasn't gotten any better." The probable result of an operation for this was shown to be somewhat conjectural. Plaintiff was attended by three physicians, two of whom testified. She had been examined by physicians for defendant but none of them testified. She actually lost only three weeks' work, but testified that her work thereafter was accompanied by much discomfort and pain. We have examined the cases cited on this point by defendant, but they are of little assistance, since they necessarily involve materially different facts; in three of the six cases cited the verdict of the jury was not reduced and apparently those cases are cited as showing what other juries awarded. That cannot be persuasive here. We cannot say that, on these facts,

the verdict is so excessive as to require a remittitur; we cannot say that any "injustice * * * is manifest" (Arl v. St. Louis Public Service Co., Mo. App., 243 S.W. 2d 797, 800, one of the cases cited by defendant) from the size of this verdict. We do not consider, as counsel suggest, that plaintiff's injuries were "minor" and "created no disability whatever." We may compare this case in some respects to that of Williams v. Illinois Cent. RR Co., 360 Mo. 501, 229 S.W. 2d 1, where a verdict reduced to $7,500 was allowed to stand.

The judgment of the trial court will be affirmed. It is so ordered. The opinion of the St. Louis Court of Appeals shown at 271 S.W. 2d 201 is quashed. All concur.