Mattie LANE, (Plaintiff) Respondent,

v.

SUPREME CAB COMPANY, a Corporation, and Azonia Smith, Defendants,

Supreme Cab Company, a Corporation, (Defendant) Appellant.

No. 31319.

St. Louis Court of Appeals.

Missouri.

Jan. 21, 1964.

Morris A. Shenker, R. J. Slater and Frank B. Green, St. Louis, for appellant.

William P. Byrne, and Librach, Heller, Byrne & Weber, St. Louis, for respondent.

ANDERSON, Judge.

This is a negligence action wherein plaintiff, Mattie Lane, seeks to recover damages for personal injuries, alleged to have been sustained when an automobile driven by defendant, Azonia Smith, ran into the rear of a taxicab owned and operated by defendant, Supreme Cab Company, in which she was a passenger. The trial resulted in a verdict and judgment in favor of plaintiff against both defendants in the sum of $1,-750.00. From this judgment defendant Supreme Cab Company has appealed.

The accident occurred on November 26, 1959, at approximately 8:30 P.M. in the forty-three hundred block of Finney Avenue, an east and west street, in the City of St. Louis. Plaintiff had been visiting her cousin who lived at 4363 Finney Avenue, which was on the north side of the street. When she left her cousin's home, her cousin accompanied her to the north sidewalk in front of said premises. At that time there was a taxicab owned and being operated by an employee of the defendant Cab Company, proceeding eastwardly on Finney Avenue. Her cousin hailed this taxicab by holding up his hand. The taxicab stopped directly across the street from where plaintiff and her cousin were at the time. It was stopped in the eastbound traffic lane. There was no other eastbound traffic on Finney Avenue at the time, nor was there, according to plaintiff's testimony, any westbound traffic. There were automobiles parked at the south curb, but alongside the cab when it stopped, there was an empty space at the curb where about two cars could be parked. It was raining, snowing, and sleeting at the time, and the streets were wet and slick. Plaintiff testified that the front lights of the taxicab were on at the time, but she did not know whether its dome light was turned on. Plaintiff walked across the street, passed in front of the taxicab, and got into the taxicab. As she started across the street she had no difficulty in seeing the taxicab. The taxicab was stopped opposite a street light located in front of 4363 Finney Avenue. The cab was in the middle of the street. At no time did the operator of the cab drive the cab to the curb for plaintiff to get into it. She was just sitting down in the rear seat of the taxicab when it was hit in the rear by the automobile driven by defendant Smith. The impact of the colli-

sion caused plaintiff to fall forward and then backward.

Plaintiff called as her witness, defendant, Azonia Smith. He was driving a 1957 Ford automobile and with him in the car were his wife, his cousin and his cousin's wife. He testified that his car was in good mechanical condition, the headlights thereon were in good condition and were on at the time of the collision; the brakes on the car were also in good condition as were the steering apparatus and tires.

Prior to the collision defendant Smith had been traveling south on Newstead Avenue. When he arrived at Finney Avenue, he made a left turn and proceeded east on Finney Avenue on the right side of the street. There was, according to his testimony, westbound traffic on Finney Avenue at the time. He stated that after he made the turn on to Finney, and had about straightened out the car, it ran into the back end of the taxicab. He further testified he could not see very far to the east on Finney Avenue, because of the rain and snow; that he did not see the taxicab prior to the collision. At another point in his testimony he said he saw the taxicab when he was 4 or 5 car lengths from it; and again stated he guessed he was a car-length and a half away from the taxicab when his cousin warned him to look out for it. The police officer who appeared at the scene of the accident shortly after it occurred, testified that Smith told him that he first noticed danger when he was approximately twenty feet away, and that he was then traveling about twenty miles per hour. The street at the place of collision is fairly level. Smith further testified that there was nothing to obstruct his view toward the east, but the westbound traffic and the water on the windshield. The windshield wipers on his car were working at the time. He was looking straight forward. His eyesight was good. He stated that the maximum speed he attained as he proceeded eastwardly on Finney Avenue was ten to fifteen miles per hour. The streets were wet and slick. While thus proceeding his cousin, who was

in the rear seat, told him to watch the cab. He then applied the brakes on his car and slid into the taxicab. His car went in a straight line from the time he applied the brakes until it collided with the taxicab. He could not swerve to the north on account of the westbound traffic, or south because of the cars parked at the south curb.

Defendant Smith further testified that he saw the lights on the cab. Later he testified he did not see any lights before he struck the cab; that the cab was double parked and had no lights on it; that after the accident when they pushed the cab to the curb he saw tail lights; that he did not see any automobile with or without tail lights at any time before he struck the taxicab; that he saw no tail lights on top of the cab; that he told the police officer, at the scene of the accident, there were no lights on the cab; that there were lights on the cab after the accident when it was moved to the curb; that the left tail light was on, but the other one was not on when he hit it.

After the collision the taxicab was pushed down the street and parked against the curb. The damage resulting from the collision was to the front end of Smith's car, and the rear end of the taxicab.

Plaintiff introduced in evidence certain portions of Chapter 69 of the Ordinances of the City of St. Louis. They read as follows:

Ch. 69, Art. II, Sec. 18, par. 7:

"It shall be unlawful for the driver of any vehicle to double park the vehicle, whether for loading or unloading purpose or any other purpose or shall wilfully obstruct the flow of traffic upon the street".

Ch. 69, Art. VI, Sec. 43:

"It shall be unlawful for a driver to stop, stand or park in any of the following places, except when necessary temporarily to avoid conflict with other traffic or in compliance with the directions of a police officer or official traffic

signal, sign or device, no person shall park or cause to be parked a vehicle:

"(a) Other than parallel to the right curb of a two-way street, and to the left curb of a one-way street, except where angle parking is provided. When cars are parked parallel to the curb the curb side of a car should not be more than six inches from the curb.

"No double parking:

"(1) on the roadway side of any stopped or parked vehicle".

The negligence charged against defendant, Supreme Cab Company was as follows:

"IV.

"Defendant, Supreme Cab Company, a corporation negligently and carelessly failed and omitted to provide plaintiff with a safe place to enter said taxicab.

"V.

"Defendant, Supreme Cab Company, a corporation negligently and carelessly failed and omitted to pull its said taxicab into the curb in order to allow plaintiff to enter said taxicab when said defendant knew or by the exercise of ordinary care should have known that automobile(s) might be traveling behind said taxicab and strike said taxicab in a stopped position.

"VI.

"Defendant, Supreme Cab Company, a corporation, negligently and carelessly stopped its said taxicab in the middle of said street and blocked the lanes of traffic thereon and failed to have tail lights burning on said taxicab, all in violation of the Statutes of the State of Missouri in such case made and provided".

It is urged that plaintiff failed to make a case for the jury both as to the alleged negligence submitted and on the issue of proximate cause.

Negligence charged against appellant was submitted by Instruction Number One. It authorized a finding for plaintiff, if the jury found that the driver of the taxicab was negligent in stopping the taxicab in the lane of traffic next to the parking lane, when he knew or should have known that it might be struck by automobiles proceeding eastwardly along Finney Avenue, and by failing to provide plaintiff with a safe place to enter said taxicab by pulling said taxicab into the curb. There was also a requirement that the jury find, as a predicate of recovery, that plaintiff suffered injuries and that said injuries were a direct and proximate result of said negligence.

In support of its contention that plaintiff did not make a submissible case on the issue of negligence, it is urged that there is no substantial evidence from which the jury could find that appellant's driver knew, or in the exercise of ordinary care should have known, that the taxicab might be struck by other eastbound automobiles. Appellant argues in support of this contention that there was no evidence that the view of the taxicab was obstructed, but, on the contrary, there was evidence that it was plainly visible before the collision. Appellant points to the testimony of plaintiff, who saw the taxicab from across the street; that it was stopped opposite a street light; that it was stopped in the middle of the street where one would be expected to look for automobiles; and that a passenger in Smith's automobile could, and did see the taxicab; that the taxicab did not make an abrupt stop, nor was the cab suddenly moved into the path of moving traffic, but had been stopped for a considerable period of time before the collision. Under the foregoing facts appellant contends that there was no duty on the part of appellant to have knowledge of the peril of collision, or to anticipate that one was likely to occur; hence no negligence was shown.

In considering facts relevant to the matter before us appellant has overlook-

ed certain other facts shown by the record. The collision in this case occurred at night. It was raining and snowing at the time. The streets were wet and slippery. Appellant's cab was double parked in the eastbound traffic lane, which was a violation of law, a situation other drivers had a right to assume did not exist. The cab was parked only a short distance east of Newstead Avenue, and would not likely, under ordinary conditions, be seen by motorists turning eastwardly from Newstead on to Finney until the turn was completed. There was water on the windshield of Smith's car as he made the turn and proceeded east on Finney. With these additional facts we believe that it could be reasonably said that one situated, as was the operator of appellant's taxicab, should have anticipated that there was danger of collision, and for that reason the court did not err in overruling appellant's motion for a directed verdict. Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820.

Appellant contends that there was no substantial evidence on the issue of proximate cause, and, for that reason, the court erred in overruling appellant's motion for a directed verdict.

Under the foregoing assignment it is urged that the testimony of plaintiff's witness, Smith, with reference to the presence of lights on the taxicab is so confusing and contradictory that it cannot be considered substantial evidence, and for that reason no causal connection is shown between the double parking and the collision.

█ It is difficult to follow appellant's line of reasoning under this point. The negligence charged and submitted was that the driver of appellant's taxicab was negligent in stopping the taxicab in the lane of traffic when he knew or should have known that it might be struck by other automobiles traveling in said traffic lane, and failing to provide plaintiff with a safe place to enter the taxicab by pulling said taxicab to the curb. There was no charge that the taxicab was being operated without lights. If

that was the issue there perhaps would be merit to appellant's contention. Smith's testimony as to the matter of lights was so contradictory that it cannot be considered substantial. But the issue of proximate cause in the case submitted does not rest on his testimony with reference to lights. It is shown by the other facts in evidence which we have heretofore detailed. In our judgment, those facts are ample to support a finding that the negligence relied on was the proximate cause of plaintiff's injuries. Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820.

█ Appellant next complains of Instruction No. One, plaintiff's verdict-directing instruction. The alleged error relied upon was the use of the word "might" in that part of the instruction which required a finding "that the driver of the defendant, Supreme Cab Co., in stopping his said taxicab in the lane of traffic next to the parking lane, knew or should have known, that said taxicab might be struck by automobiles proceeding eastwardly along Finney Avenue." It is urged that by the use of the word "might" the instruction authorized a finding that said defendant was negligent if its driver could foresee the "mere possibility" that others might negligently or otherwise collide with the taxicab, and, therefore, made said defendant an insurer of plaintiff's safety.

█ It is true that a defendant cannot be held to be negligent for failing to anticipate a "mere" or "remote" possibility of danger to others from a situation created by him. Berry v. Emery, Bird, Thayer Dry Goods Co., et al., 357 Mo. 808, 211 S.W.2d 35, 41. However, we do not believe that Instruction Number One by the use of the word "might" authorized such a finding. Counsel for neither party has cited any case directly in point on the proposition. However, this court through its own research has found several well considered opinions on the subject. They are Hannon v. Myrick, 118 Vt. 428, 111 A.2d 729; Liska v. Chicago Rys. Co., et al, 318 Ill. 570, 149 N.E. 469. 475;

532

Nelson v. Boston & M. Consol. Copper & Silver Mining Co., 35 Mont. 223, 88 P. 785, 786; Louisville Ry. Co. v. Wellington, 137 Ky. 719, 126 S.W. 370; Scott et al v. Shine (Tex.Civ.App.) 194 S.W. 964, 1. c. 969.

In the opinion in Liska v. Chicago Rys. Co., supra (149 N.E., 1. c. 475) which was an action for damages for personal injuries, we find the following:

"Complaint is * * * made * * * of the word 'might' in the fifth instruction, which states that it was the duty of the motorman to exercise ordinary care to keep a proper lookout for the safety of persons, including children, who might lawfully attempt to cross the track. These instructions, it is asserted, required the motorman to anticipate mere possibilities; one, that a child would rush from the curb to the track, and the other, that a person or child in a position of safety might change to one of danger. Neither instruction imposed upon the motorman the duty to anticipate a possibility. Both required merely the exercise of ordinary care by the motorman to ascertain the child's evident or apparent purpose. When the whole of each of these instructions is read, the jury could not have been misled."

Louisville Ry. Co. v. Wellington, supra, was an action for injuries sustained by a passenger on one of defendant's cars as a result of an assault by other passengers. The court gave an instruction which authorized a verdict for plaintiff, if they found, among other things, that the conduct of the passengers prior to the assault was such as would induce the conductor "to have anticipated that such assault might be made." On appeal the error relied on was the use of the word "might" in said instruction instead of the word "would." In holding there was no error, the court (126 S.W. 1. c. 371) said:

"The error relied upon is the use of the word 'might' instead of the word

'would.' The rule applicable to such cases is pointed out by this court in Kinney v. Louisville & Nashville R. R. Co., 99 Ky. 59, 34 S.W. 1066, wherein the court said: 'Out of this obligation, and the doctrine that carriers of passengers are required to use the utmost care in the management of their trains in order to prevent or avoid injury to their passengers, arises the rule that makes it the duty of carriers to exercise the highest practicable degree of care and diligence in protecting and guarding their passengers from violence and assaults, from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties. * *' It will be observed that the foregoing rule exacts of the carrier the highest practicable degree of care and diligence in protecting and guarding its passengers from violence and assaults, from whatever source, which may be reasonably anticipated or naturally expected to occur under the circumstances of the case and the condition of the parties. In other words, the court, in speaking of the present duty of the carrier uses the word 'may.' It, therefore, follows that where an instruction is designed to cover a past event (that is, to set forth the duty of the carrier with reference to something that has already taken place), the use of the word 'might' is altogether proper. In other words, 'may' and 'might' have practically the same meaning when construed with reference to the time of the occurrence. 'May' is proper when used with reference to the present, in speaking of a future event; 'might' is likewise proper when used with reference to a past time, and concerning an event thereafter to take place, but which had already taken place at the time the instruction was given."

Scott v. Shine, supra was a suit for personal injuries sustained when a horse,

drawing a surrey in which plaintiff was riding, became frightened of steam emitted from an exhaust pipe of a cotton gin, wheeled about and ran, throwing plaintiff to the ground as a result of which she sustained serious injuries. The gin was owned by defendant's testator. The pipe extended through the walls of the gin toward the street. Complaint was made of an instruction because it used the word "might" in submitting the issue as to whether the owner of the gin should have anticipated the frightening of horses by the act of emitting steam from said exhaust pipe, the contention being that the word "might" imports a mere possibility rather than the probability of the happening of an accident of the character in question; that liability would not attach if such an injury was only possible, but only if injury "would" reasonably have been foreseen. The court held there was no merit to the contention citing Louisville Ry. Co. v. Wellington, supra, where the court held that the words "may" and "might" comprehend the idea of probability, as well as the idea of possibility.

In Nelson v. Boston & M. Consol. Copper & Silver Mining Co., 35 Mont. 223, 88 P. 785, 1. c. 786, the court said:

"The word 'might' as defined by Webster, denotes not alone 'possibility,' but also 'ability' and 'capacity.' 'Could' denotes 'ability' and 'capability.' We do not think that these instructions allowed the jury to enter the realm of conjecture as to what the plaintiff might, or could possibly, have learned, but rather, that they confined the test to what a man of ordinary prudence, exercising ordinary and usual care, would have learned, and we are satisfied the jury so understood them".

In Hannon v. Myrick, 118 Vt. 428, 111 A. 2d 729, 1. c. 731, the court had the following to say on the subject:

"A sampling of our cases shows that we have used the words 'could', 'might', * * * and 'should' interchangeably in determining foreseeability in the sense here involved. * * * 'On the question of what is negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated.' * * * In Humphrey v. Twin State Gas & Elec. Co., 100 Vt. 414, 422, 139 A. 440, 444, 56 A.L.R. 1011, the opinion states, 'the existence of actionable negligence depends, not upon what actually happened, but upon what reasonably might have been expected to happen. Unless it be shown that a prudent man, situated as the defendant was at the time of his alleged default, knowing what he knew or should have known, would have regarded injury to the plaintiff or to one of the class to which he belonged as likely to result from the act or omission complained of, actionable negligence is not made out.' * * In Butterfield v. Community Light & Power Co., Inc., 115 Vt. 23, 26, 49 A.2d 415, 417, the opinion states: 'On the question whether there was negligence on the part of the plaintiff it is material to consider the consequences that a prudent man might reasonably have anticipated from his actions or failure to act.'

" * * * 'Might' is the past tense of 'may'. 'May' also means 'to be able'. Webster's New International Dictionary. Hence 'could' and 'might' may both mean 'was able'. * * *

"We conclude that what the plaintiff in the exercise of the care of a prudent man in like circumstances, could or might have reasonably foreseen was likely to result, was no more or less that what she should or ought to have foreseen was likely to result".

In the case at bar by instructing the jury that to find for plaintiff they should find, among other facts, that the driver of the taxicab knew or should have known that the taxicab "might" be struck by automobiles proceeding eastwardly along Finney

Avenue "was no more or less than requiring a finding that the taxicab driver should or ought to have foreseen that the taxicab was likely to be struck by other automobiles, and that it did not authorize a verdict upon a finding of a mere possibility of collision. We believe that any jury would so understand the instruction. If appellant thought the jury might have been confused or misled by the instruction, it should have offered a clarifying instruction so as to leave no possible doubt as to the law being submitted. We rule the point raised against appellant.

Appellant's final assignment of error is that the verdict is excessive. This necessitates a review of the evidence bearing on said issue.

Plaintiff testified she had just entered the cab and was in the act of sitting down when the collision occurred; that she fell forward, then backward. She was removed from the cab and taken to Homer Phillips Hospital in a police car. What treatment she received at the hospital does not appear in the record. The police officer who took plaintiff to the hospital testified that his report showed "no apparent injuries", which information he stated was given him by Dr. Walter McDonald at the hospital, after the doctor had examined plaintiff.

Plaintiff further testified that following the accident she experienced pain in her neck, head, and shoulder; that she still suffered pain in the neck and head once in a while, sometimes every week.

On December 1, 1959, plaintiff consulted Dr. Walter R. Johnson at his office. Dr. Johnson testified that on this first visit plaintiff complained of recurring headaches and pain in her neck which radiated down her body. He made an examination of plaintiff at the time. He found swelling of the throat and neck muscles, and spasm of the deep and superficial muscles. There was acute tenderness in the region of the 5th cervical vertebrae and pain which radiated down her back. All motions of the cervical spine increased the pain. The doctor's diagnosis was that plaintiff had suffered a mild whiplash injury to the cervical spine, and a strain of the right posterior cervical muscles. He gave her some analgesic pills and a muscle relaxer and suggested she go home and relax.

Dr. Johnson next saw plaintiff on December 5, 1959. Her complaints were the same as those made on her first visit. She was still under the same treatment as prescribed on her first visit. He also saw her on December 12, 1959. Her complaints then were the same as on the previous visits, but were recurrent. He stated that it appeared that the medicine was doing the job. On this visit he changed the medicine he had prescribed. The doctor saw her again on the 19th and 28th of December, 1959. On those dates plaintiff's complaints were the same as those previously made, but there was a difference in the intensity of the pain. Plaintiff's next visit to the doctor's office was on January 16, 1960, at which time her complaints were the same as they were on her previous visits. On January 23rd, which was her next visit to the doctor's office, plaintiff's complaints were occasional pain and stiffness; pain on the extreme turning of her head from left to right. Dr. Johnson again saw her on January 30, 1960, and March 25, 1960. On the latter date plaintiff told Dr. Johnson that she had had another attack of pain. The doctor's examination on that date showed evidence of muscle spasm. The doctor put her back on muscle relaxing medicine. Her next visit was in November, 1960, at which time her complaints were as previously made, which was the second attack of pain in six months. The doctor again gave her medicine. On October 6, 1961, she returned to the doctor's office. She had had another attack of pain. On this visit the doctor gave her a prescription for analgesic and for muscle spasm. The doctor did not see her again until the Thursday before the trial, March 6, 1962. An examination then revealed no positive findings. There were complaints of occasional episodes of pain brought on frequently by change in weather.

Dr. Johnson testified that the reasonable value of his services was $150.00.

◼ Considering the nature and extent of plaintiff's injuries, we do not feel warranted in disturbing the verdict. The amount allowed by the jury was not manifestly excessive.

Finding no error in the record, the judgment appealed from is affirmed.

WOLFE, Acting P. J., and JACK P. PRITCHARD, Special Judge, concur.

RUDDY, P. J., not participating.