**Janet Lee TERRY, a Minor, by Robert Terry, Her Next Friend, Plaintiff-Respondent,**

v.

**Edward G. SWEENEY, Defendant-Appellant.**

No. 32579.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 17, 1967.

Morris, Wuestling & James, Hoffman & Shostak, St. Louis, for defendant-appellant.

Rooney, Webbe & Davidson, John J. Schlueter, Russell N. MacLeod, St. Louis, for plaintiff-respondent.

ANDERSON, Presiding Judge.

Plaintiff, Janet Lee Terry, a minor, by and through her next friend, Robert Terry, brought this suit against defendant, Edward G. Sweeney, for damages for personal injuries alleged to have been caused by defendant's negligence. The trial below resulted in a verdict for plaintiff in the sum of $5,000.00. Defendant has appealed from the judgment entered on said verdict.

Plaintiff's petition alleged that defendant was the owner of premises known and numbered as 3024 Minnesota Avenue, St. Louis, Missouri; that said premises were rented to various tenants, and in connection therewith defendant furnished, controlled and maintained a backyard which was used in common by all the tenants; that on August 18, 1964, plaintiff lived with her parents in said premises, and on said date defendant suffered, permitted and allowed a bed and springs to remain in the backyard of said premises, and as a result of defendant's carelessness and negligence, plaintiff was caused to be seriously and permanently injured. The act of negligence assigned which was submitted is as follows:

"Defendant negligently and carelessly failed and omitted to remove said bed and springs from said yard when he knew or by the exercise of ordinary care should have known of the yard's hazardous and unsafe condition and the possibility of injury to plaintiff."

The petition then sets forth the injuries alleged to have been sustained by plaintiff as a result of defendant's said negligence. The prayer of the petition was for $25,000.-00 and costs.

Defendant's answer was a general denial.

On August 18, 1964, defendant owned a four family dwelling at 3024 Minnesota Avenue in St. Louis. There was a backyard immediately to the rear of the building where children played every day during the summer months. One of the apartments in the building was occupied by Mrs. Marion Benka and her family. Mrs. Benka was hired by defendant to manage the property for him. It was her duty as manager to collect the rent, clean the apartments whenever a tenant moved, keep debris and hazards out of the yard and do general maintenance work around the building. For this work Mrs. Benka was paid two dollars every week and five dollars at the end of each month.

One of the apartments was occupied by the Terry family, which consisted of Robert Terry, the father, his wife, Shirley Ann, and their four children, one of whom was plaintiff, age six.

Mrs. Benka owned a rollaway bed which she used in her apartment. Sometime prior to August 17, 1964, she was given another bed that was in better condition than the one she had been using. The wires on the old bed were coming loose, and it was rusty. Mrs. Benka testified: " * * * If you didn't get the legs pulled out far enough, if you would step on one end of it, it would fold up, and I had occasion for it to fall down on myself when I sat on the end of it, it would fold under, and I was afraid my children would get hurt on it during the night sleeping on it, that it would fold up. It had some casters off it that damaged the floor."

About noon on August 17, 1964, Mrs. Benka removed the bed from her apartment. She intended to store it in the basement of the apartment building but was unable to do so because the basement steps were full of tools used in caring for the yard. She then folded the bed and placed it underneath the steps leading up to the back door of the house. The bed was not covered when it was placed there. Mrs. Benka testified that after placing the bed

under the steps she told the children not to get on the bed, because they could get a foot or hand caught in it or cut their hands on the spring; that it wasn't a toy and was not to be played with. She stated that when the children played they used the underneath part of the steps as a hiding place.

The following morning, August 18, 1964, Mrs. Benka left her home to be interviewed for a job. When she left the bed was still under the steps. She returned home at noon. When she arrived, the children were playing in the backyard. There were eight of them including plaintiff, Janet Lee Terry, who was then six years old. The children asked Mrs. Benka if they could play under the steps. She stated the children wanted to play "hospital." She told them they could play under the steps but not to get on the bed. She then went upstairs to Mrs. Terry's apartment to let Mrs. Terry know she had returned. Mrs. Terry had been keeping her children that morning. Mrs. Terry was making coffee at the time and invited Mrs. Benka to sit down, have a cup of coffee and tell her about her job. Mrs. Benka remained there with Mrs. Terry about a half hour when they heard loud screams. Mrs. Benka testified: " * * * We both run to the door and then her son and Jerry Cole, met us at the back door, both of them talking at once, something about somebody getting hurt. We both went outside and there was Janet standing there holding her hand, screaming. I picked her hand up and looked at it and Shirley (Mrs. Terry) came over there and her hand was full of blood. I said, 'Shirley, she's been hurt.' So she come and picked her up and tried to console her to stop her crying, then the kids finally got it out that she had her hand caught in the bed. * * * I looked at the bed, * * * I seen blood stains on the bed. I looked around the bed and there was a piece of paper there and I picked the end of her finger up on a piece of paper and I myself threw the finger in the trash."

Randall Terry, a brother of Janet Terry, witnessed the accident. At the time he was going on nine years of age, and at the time of the trial was ten years old. He was called as a witness for plaintiff. Just prior to the accident, the children were playing doctors and nurses. The bed was under the stairs before they started playing. He and Jerry Cole took it out from under the steps. Then two of the children, Butchy Benka and Janet Terry got on the bed. The witness gave the following testimony with regard to the accident: "Q. * * * Did anything unusual happen after they got up on top of the bed? A. Yes, sir, the bed kind of tipped at the end. * * * the end of the bed kind of fell and the leg kind of folded up. Q. And did anything happen to Janet as a result of this bed falling? A. Yes, * * * her two fingers got caught in the folds of the bed * * *. * * * Her right hand. * * * Q. You didn't see her fingers at that time? A. Yeah, I seen her fingers. Q. Where were her fingers? A. It was caught between the leg and the bed. Q. * * * did anything happen to her fingers when they got caught in that bed? A. Yes, sir, the end of her fingers kind of tipped this part (indicating) just to the nail. * * * It cut this part (indicating) right here, just to the nail off and it was laying on the ground. * * * Q. What was the condition of that spring bed, Randy, before the accident happened? A. Well it was rusty * * * it had two rollers off and the springs were kind of broke, some springs were broke out, and if you didn't have this bed sitting up properly it would tip over, the end would kind of tip over. * * * The end would kind of fold up if you didn't have it set out all the way. Q. * * * Are you referring to the leg again, is that what you are referring to? A. Yes, sir. Q. That would tip under? A. Yes, sir, if it weren't set up properly. Q. * * * And is that what happened? Did that leg tip when this accident happened? A. Yes, sir. Q. And then the bed, the spring part of the bed where she was lying, did that fall to the

ground? A. One end of it did. Q. Do you know exactly where Janet's fingers were caught? A. They were caught between the leg and the bottom of the bed."

On cross examination the witness testified that before it was taken out from under the steps the bed was folded in a "U-shape;" that when he and Jerry Cole pulled it out from under the steps it was in a "U-shape;" that they let one side down and then the other.

Mrs. Terry took Janet to Cardinal Glennon Hospital, where she remained until August 26, 1964, under the care of Dr. Francis Paletta, a plastic surgeon. Examination revealed injury to the right ring and middle fingers. The middle finger was lacerated and the distal fourth of the soft tissue of the ring finger had been amputated. A local anesthetic was administered and the wound on the middle finger was sutured. The ring finger was repaired with suturing, and since there was a loss of tissue in order to maintain as much of the length of the finger as possible it was stitched to the palm of the hand and allowed to grow on the palm of the hand. In that way skin and fatty tissue became attached to the finger from the palm of the hand. The finger remained in this position for about three or four weeks then cut loose and stitched up along the edge. The raw surface in the palm of the hand which resulted from this procedure was repaired by a graft of skin taken from the inner aspect of the arm. Prior to stitching the finger to the palm of the hand, a Kirschner wire was inserted in the tip of the finger because it was fractured, and in order to stabilize the finger when attached to the palm of the hand. She was dismissed from the hospital September 14, 1964, at which time there was a well healed laceration of the middle finger and a well healed suture of the palmer flap at the tip of the ring finger.

Dr. Paletta saw plaintiff several times thereafter. His diagnosis was traumatic amputation of a portion of the distal phalanx of the right ring finger and a severe laceration of the right long finger, due to the accident of August 18, 1964. He stated that the injury produced pain, and that plaintiff would suffer future pain because of the lack of padding beneath the terminal portion of the nail on the right ring finger; that any type of work or play where she will press down directly on the tip of her finger will cause pain because of such insufficient padding. He also stated that the injury would be permanent; that her hand will never be the way it was before the accident; that further surgical procedures, requiring five to ten days in the hospital, would be necessary to graft skin and fat to build up the finger more than she already has, commensurate with hand growth; that she has sustained a cosmetic loss; and that the finger is one quarter of an inch shorter than it was, but functional.

At the time of the occurrence, plaintiff was in the first grade at school. She lost four or five weeks from school but remained up with her class. She is left handed and eats with her left hand only. She rubs the palm of her right hand and the end of her finger over and over again. She had trouble eating, sleeping and playing with other children. After the accident for several nights she would wake up crying. According to her mother's testimony, plaintiff is not using her right hand as before, she shows it to everybody and says, "Look at my hand. Look at my hand." She is partial to her right hand, but can do the same things she did before the accident.

Defendant contends that the trial court erred in overruling his motion for a directed verdict at the close of the whole case because the evidence adduced failed to establish any basis for recovery by plaintiff against defendant. In support of this contention, it is urged there was no actionable negligence shown for the reason that the placing of the bed under the steps, if negligent, was not the proximate cause of plaintiff's injuries; but that the efficient moving force which caused said injuries was the

intervening act of plaintiff's playmates in removing the bed from under the steps. It is further argued that the event was so extraordinary and unforeseeable that defendant's negligence, if any, cannot be considered the proximate cause of plaintiff's injuries. It is also urged that the bed was not a dangerous instrumentality, therefore, it was not shown that defendant violated his duty to maintain the backyard in a reasonably safe condition for use by his tenants and others by failing to remove same.

■ Defendant has mistakenly assumed that the negligence submitted was the placing of the bed in the yard by defendant. The actual submission was failure to use ordinary care to remedy a hazardous condition due to the fact that the bed was dangerous to children playing on or about said bed because of the likelihood of injury by reason of the shearing effect of the movement of the metal parts of said bed. This is important for the reason that the bed was placed under the steps by Mrs. Benka, not as agent of defendant, but for her own convenience, while her failure to remove the bed, if dangerous to children in the respects claimed by plaintiff, was a breach of duty by defendant, since the evidence clearly shows that Mrs. Benka was defendant's manager charged with the duty to keep the yard free from any hazardous condition. Her failure in that respect would therefore be chargeable to defendant.

The law governing the liability of lessors to tenants, and others lawfully upon the land with the consent of the lessee, for injuries sustained on that part of the premises over which the lessor retains control is clearly set forth in Restatement of the Law 2d, Torts 2d § 360, p. 250, as follows:

"A possessor of land who leases a part thereof and retains in his own control any part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

"Comment:
\*      \*      \*      \*      \*      \*

"(d)   The rule stated in this Section applies not only to the hall, stairs, elevators, and other approaches to the part of the land leased to the lessee as a flat, office, or room in a tenement or boardinghouse, but also to such other parts of the land or building to the use of which by the express or implied terms of the lease the lessee is entitled, usually in common with other lessees, such as a bathroom in a boardinghouse and the roof or yard of a tenement building or apartment house."

■ The plaintiff's evidence shows that the children of the tenants in defendant's apartment house used the backyard, including the area beneath the steps, as a playground. This fact was known to Mrs. Benka, defendant's agent. Also, Mrs. Benka testified she had given the children express permission to play under the steps the morning the accident happened. Plaintiff was, therefore, lawfully on the premises at the time she was injured. Her right to be there was an incident of the contract of letting between her parents and defendant, and by express permission. Reek v. Lutz, 90 R.I. 340, 158 A.2d 145. Therefore defendant was under a duty to exercise ordinary care to keep the premises in a reasonably safe condition for the use by plaintiff and the other children residing in said apartment building. Green v. Kahn, Mo., 391 S.W.2d 269; Kemp v. Doe Run Lead Co., Mo.App., 57 S.W.2d 758; Peterson v. Brune, Mo., 273 S.W.2d 278; Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1.

■ Was the bed a dangerous instrumentality? Mrs. Benka testified that the bed spring was broken and the brad that held the bar which connected the short leg to the rounded leg was loose, so that if the legs were not pulled out far enough the legs would fold under when the bed was sat upon. She further testified she was fearful that her children would get hurt on it during the night when sleeping on it. Like testimony was given by her son who also testified for plaintiff. It thus appears that the bed had some infirmities which a jury could reasonably find rendered it dangerous when used by one not familiar with its condition or when not set up properly. In determining the matter the age of the child should be taken into account. What could be considered dangerous to children due to their childish ignorance, indiscretions and impulses might not be dangerous to an adult; and in such a situation ordinary care would require more vigilance and caution than might be sufficient with respect to an adult. Bronson v. Kansas City, Mo.App., 323 S.W.2d 526; Hammontree v. Edison Bros. Stores, Mo.App., 270 S.W.2d 117; Kemp v. Doe Run Lead Co., Mo.App., 57 S.W.2d 758; 65 C.J.S. Negligence § 12(b), p. 588.

Defendant asserts that the facts in evidence fail to show plaintiff's injuries to be the proximate result of the breach of any duty owed her by defendant. The reasons assigned in support of said contention are, (a) the event was unforeseeable and, (b) the removing of the bed and unfolding it by the two boys was an intervening cause of plaintiff's injuries for which defendant could not be held liable.

■ We agree with the proposition that negligence cannot be predicated upon a failure to take precautionary measures to prevent an injury to a person occupying the status plaintiff did when such injury could not have been reasonably anticipated. However, it is unnecessary to show that the party charged should have anticipated the exact injury sustained, or the exact manner of its occurrence. It is sufficient to show that the defendant knew or should have known there was an appreciable danger that some injury would likely result if precautionary measures were not taken. The rule to be applied is stated in Zuber v. Clarkson Construction Co., 363 Mo. 352, 251 S.W.2d 52, 1. c. 55, as follows:

"Relating to those dangers to be reasonably anticipated—if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence. While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it. * * *." See also Phillips v. Stockman, Mo.App., 351 S.W.2d 464.

■ Whether or not the occurrence in controversy was so extraordinary and unusual that defendant should have expected or foreseen it depends upon the facts of which defendant was aware, as shown by the evidence. It appears that the bed contained defective parts. Mrs. Benka, defendant's manager, knew of this condition. She also knew that if the bed was not set up properly it would collapse when sat upon. She was aware of the fact that the children residing in the apartment building used the backyard as a playground. She knew that on the morning of the accident these children were playing hospital; and that she gave them permission to play under the steps. Plaintiff was a small child six years old, and was lawfully on the premises. It is common knowledge that the acts of a child of her age are wholly unpredictable and that they are not fully appreciative of dangers likely to be encountered. The same is true of the other children who were with her at play that morning. Children

the ages of those playing hospital have vivid imaginations when engaged in play. In playing hospital it would reasonably be expected they would be attracted to the bed as a convenience to the fulfillment of the little drama in which they were engaged. Under the foregoing facts it could reasonably be found that defendant's manager should have foreseen that plaintiff and the other children would likely make use of the bed which was readily accessible and that some accident and injury might result in its use. Our ruling is based upon the law announced in the folllowing cases: Hammontree v. Edison Bros. Stores, Mo.App., 270 S.W.2d 117; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267; Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820; Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627; Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825.

■■■ Since we hold that the element of foreseeability was a jury question we are compelled to rule against appellant's contention that as a matter of law the act of boys in removing the bed from beneath the steps was a new and independent act which so interrupted the chain of events as to become the sole proximate cause of the plaintiff's injuries. Under the decisions it has been held that if some injury can be reasonably anticipated or reasonably probable as a result of a defendant's negligence, then the added act of a third person does not break the chain of causation and defendant is liable. In such event the act of the third person is merely a concurring cause. Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820. The matter was for the jury to determine from all the attending circumstances in evidence. McWhorter v. Dahl Chevrolet Co., 229 Mo.App. 1090, 88 S.W.2d 240. In our judgment the jury reasonably could

have found that plaintiff's injuries would not have occurred if it had not been for the failure of defendant to remove the bed to a place where it would not have been accessible to the children at the time in question. Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627.

Plaintiff offered and the Court gave the following verdict directing instruction:

"Your verdict must be for the plaintiff if you believe:

"First, defendant employed Marion Benka to manage defendant's apartment and to act for defendant in the care and maintenance of the backyard of said apartment, and

"Second, said backyard was in the possession of the defendant and was customarily used for play by children of the tenants of defendant (including plaintiff) with defendant's knowledge and consent, and

"Third, there was a rollaway bed in defendant's backyard which was dangerous to children playing on or about said bed because of the likelihood of injury by reason of the shearing effect of the movement of the metal parts thereof when such bed was changed or moved from a flat surface position toward a folded or rollaway position and as a result said bed and said backyard were not reasonably safe, and

"Fourth, plaintiff, while playing with other children in, on and about said bed in said backyard, sustained cutting injuries to the fingers of her hand by reason of a shearing movement of the metal parts of said bed, and

"Fifth, defendant, through his employee, Marion Benka, acting within the scope and course of her employment, knew, or by using ordinary care should have known, of the existence of the condition referred to in paragraph Third, and

"Sixth, defendant, by and through his employee, Marion Benka, failed to use ordinary care to remedy the condition by removing the bed from the backyard, and

"Seventh, as a direct result of such failure plaintiff was injured. M.A.I. 22.05"

Defendant's objection to the instruction is that it violates Civil Rule 70.01, V.A.M.R., in that it is not simple, brief, impartial nor free from argument, and requires findings of detailed evidentiary facts. It is clear that in drafting the instruction, counsel attempted to follow M.A.I. 22.05, with modifications necessary to fairly submit the issues. The instruction could have been shortened by eliminating the first and second requirements, for it is conceded that Marion Benka was defendant's manager charged with the duty of maintaining the backyard, and that defendant retained control of the backyard. It is also conceded that the children used the backyard with defendant's consent. But requiring findings on these matters in no way prejudiced defendant. Nor do we find merit in the other complaints above mentioned. Defendant merely makes a blanket charge with respect to said complaints, and specifies no particulars whatever.

Defendant's next complaint is that the instruction fails to properly submit the issue of agency, in that it fails to define the "scope of employment." In our view no definition was necessary. Furthermore the evidence of both parties was that Mrs. Benka did have the authority and the duty to keep the premises in order, and this would entail the duty to remove therefrom any dangerous object. Agency as it relates to the negligence charged was not a contested issue. We must rule that the point urged is without merit.

Defendant's final point is that the verdict of $5,000.00 is excessive. We have carefully examined the evidence relating to plaintiff's injuries and have concluded that such is not the case.

The judgment is affirmed.

RUDDY and WOLFE, JJ., concur.